BOARD OF TRUSTEES OF JUNIOR COLLEGE DISTRICT NO. 508, COOK COUNTY, Plaintiff-Appellant, *v.* COOK COUNTY COLLEGE TEACHERS UNION, LOCAL 1600, Defendant-Appellee.

First District (2nd Division)    No. 80-1795

Opinion filed May 26, 1981.

Arvey, Hodes, Costello & Burman, of Chicago (Fred R. Kimmel and Donald F. Spak, of counsel), for appellant.

Gilbert Feldman, of Cornfield & Feldman, of Chicago, for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Plaintiff Board of Trustees of Junior College District No. 508 (the Board) sought to enjoin defendant Cook County Teachers Union (the Union) from resubmitting a grievance of one of the Union's members to the arbitrator who had initially ruled thereupon pursuant to the collective bargaining agreement existing between the parties. The Union counter-claimed, asking either for an order that the Board submit to further arbitration of the grievance issue or for adjudication of the issue by the circuit court. That court denied the parties' cross-motions for summary judgment and ordered the matter remanded to the arbitrator. The Board appeals, asking this court to determine whether such remand was erroneously mandated.

The Board is empowered to govern and manage the community colleges located within the city of Chicago. The Union is a labor organization which serves as the exclusive bargaining representative of full-time faculty members employed by the Board.

A collective bargaining agreement existed between the parties at the time during which the matters now at issue occurred. Among the provisions of that agreement was a section governing grievance pro-cedures. The agreement provided that a grievance would, if necessary, be resolved through arbitration proceedings. A specified individual was appointed to serve as permanent arbitrator. The parties to the agreement promised that "the decision of the arbitrator will be accepted in good faith as final by both parties to the grievance and both will abide by it," and that neither party would appeal an arbitration award to the courts "unless the arbitrator is believed by either party to have acted illegally."

In January 1972, the Board began a reorganization of the structure of various departments. One of the components of this reorganization involved the merger of the previously separate departments of art, foreign languages, humanities, and music into a single entity.

The individual departments had been directed by individual chair-persons. Each such person was entitled to certain special considerations under the collective bargaining agreement. Due to the time-consuming functions required of a chairperson, he would be allowed a lesser teaching load while still receiving his full teacher's salary. This reduction in teaching load is referred to as "released time."

Pursuant to the merger plan, the chairpersons of the four depart-ments involved were asked to choose a single chairperson for the planned

consolidated department. They either could not or would not do so. Nevertheless, pending completion of reorganization, the Board informed the four individuals that only six hours total released time per semester could be made available for distribution among them (as opposed, apparently, to the availability of a similar amount of time for each person previously). The four agreed among themselves upon a plan to rotate accessibility to the six available hours.

In spite of this rotation agreement, three of the four persons involved filed grievances, complaining that they had been deprived of released time. Pursuant to procedures set forth in the collective bargaining agreement, the grievances eventually were submitted to arbitration. After holding evidentiary hearings on May 18, June 18, and July 27, 1976, the arbitrator issued a written decision on December 22, 1976. Due to the nature of this appeal, it is essential that certain portions of that document be set out.

In a section entitled "opinion," the arbitrator set forth his findings. Among them, he stated:

"2. The merger of the departments involved herein into one department never was actually completed as of the time of the hearing in this case. * * *"

"3. The grievants continued to perform all of the department chairpersons' functions with the full knowledge of the Board after the announcement of the Board's merger plans."

"6. * * * The grievants in this case, * * * operating as department chairpersons, were entitled to the full contractual released time provided for chairpersons under the terms of the agreement between the parties."

In a section entitled "award," the arbitrator stated that the three grievants were:

"[A]warded compensation to be computed upon the basis of the contractual released time to which they were entitled as department chairpersons *during the period involved in this proceeding.*" (Emphasis added.)

A dispute concerning the arbitrator's decision arose between the parties about the meaning of the term "compensation" and about the period of time for which this compensation was to be made. Apparently, both the Union and the Board orally agreed to resubmit the matter to the arbitrator for clarification of these items. Thereafter, attorneys for the respective parties submitted letters to the arbitrator outlining their positions. As to the time period issued, the Union's attorney stated that "the parties can also readily determine each semester that the Grievants served in the capacity of department chairpersons * * *." The Board's attorney stated, "In view of the Union's insistence that the parties can

readily determine the semesters in which the grievants were denied released time, the Board will not pursue the matter further, and will leave it for the determination of the parties. The Board states, however, that the Arbitrator should not clarify his award so as to provide for released time through the period of the hearing because none of the grievants were department chairmen through that period. It is suggested that the Arbitrator not attempt to clarify the award in this respect."

On May 20, 1977, the arbitrator issued his clarification. He resolved the meaning of the word "compensation" to the satisfaction of the parties. As to the time-period issue, the arbitrator stated:

> "The parties could not agree as to the terminal point of the period covered. As indicated in my Award, the grievants were granted compensation for released time *during the period in which they were acting as Department Chairmen* and the terminal point of that period was not determinable as of the date of the hearing because the departmental merger which * * * would end their terms as Department Chairmen, was not yet completed. *I find therefore that the terminal point of the period * * * will be the point at which the department merger specifically took place and became effective.* It is my understanding that the department merger was accomplished sometime in 1976 after the date of the hearing and I direct that the parties shall by mutual agreement determine that date which in effect will fix the period of the compensation for the released time granted in my Award. If they cannot agree, I will retain jurisdiction for determination of that issue." (Emphasis added.)

A problem thereafter arose between the Board and the Union as to the amount of compensation due grievant Tom Roby. The Board took the position that Roby had ceased functioning as a department chairman at the end of the fall semester 1975. The Union claimed on Roby's behalf that the latter was entitled to compensation for the spring semester of 1976 as well.[1] When the parties could not reach agreement, the Union invoked the jurisdictional reservation of the arbitrator for the purpose of his determining the compensation properly owed to Roby. The Union made plans to proceed *ex parte* on the matter in the face of the Board's refusal to return to arbitration. In order to preclude such an action, the Board filed this lawsuit.

After hearing argument of the parties, the circuit court remanded the matter to the arbitrator, before whom each party was to be "entitled to present * * * its evidence and arguments."

---

[1] It appears that the merger was finally effected on August 30, 1976, after the close of evidentiary hearings before the arbitrator but prior to the issuance of his initial award decision.

I

The Board asserts the trial court erred in returning the matter to the arbitrator and allowing the parties to there submit additional evidence.

The Illinois courts have long recognized the overriding interest in finality inhering in the submission of disputes to arbitration. Accordingly, judicial review of the *merits* of an arbitration award generally will not be had. This standard is more stringently applied in the area of collective bargaining agreements. (*Board of Trustees v. Cook County College Teachers Union, Local 1600* (1979), 74 Ill. 2d 412, 418, 386 N.E.2d 47.)[2] Thus, the arbitrator's decision will not be reviewed on appeal in the absence of fraud, partiality or misconduct. (*Pillott v. Allstate Insurance Co.* (1977), 48 Ill. App. 3d 1043, 1047, 363 N.E.2d 460; see also *Country Mutual Insurance Co. v. National Bank of Decatur* (1969), 109 Ill. App. 2d 133, 136, 248 N.E.2d 299, *appeal denied* (1969), 42 Ill. 2d 583.

Here, this court is not asked to directly review the merits of an arbitrator's award. Rather, one of the parties to the arbitration seeks to have the opposing party prevented from returning to the arbitrator for reexamination of a grievance already ruled upon by that decisionmaker.

■■ The function of the court is very limited when parties have agreed to submit all questions of contract interpretation to an arbitrator (*United Steelworkers of America v. American Manufacturing Co.* (1960), 363 U.S. 564, 567-68, 4 L. Ed. 2d 1403, 1406-07, 80 S. Ct. 1343, 1346; yet, where an arbitrator's opinion and award is ambiguous, the proper course is to send the case back to the arbitrator for clarification. (See generally Annot., 37 A.L.R.3d 200, §7 (1971).) Such a remand is not an indication of the court's opinion on the merits of the case. See *International Brotherhood of Electrical Workers v. Olin Corp.* (6th Cir. 1972), 471 F.2d 468, 472-73; *Hanford Atomic Metal Trades Council v. General Electric Co.* (9th Cir. 1965), 353 F.2d 302, 307; *United Steelworkers of America v. Timken Roller Bearing Co.* (6th Cir. 1963), 324 F.2d 738, 741; *Botica v. Floyd Steel Erectors, Inc.* (N.D. Ill. 1980), 485 F. Supp. 334, 339-40.

Our review of the pronouncements of the arbitrator convinces us that the award to grievant Tom Roby is ambiguous. In the discussion section of his initial decision, the arbitrator stated:

"Mr. Roby performed the duties of chairperson of the Humanities Department in the academic year 1973 until about the middle of the fall semester of 1975, except that from the fall of 1974 to the spring of 1975 he was on a professional leave of absence."

[2] For general background on the topic, see 5 Am. Jur. 2d, *Arbitration and Award* §§143-150 (1962); *The Common Law of Grievance Arbitration: New Wine in Old Bottles?* 58 Nw. L. Rev. 494 (1963); Gitelman, *The Evolution of Labor Arbitration*, 9 DePaul L. Rev. 181 (1960); Scoles, *Review of Labor Arbitration Awards on Jurisdictional Grounds*, 17 U. Chi. L. Rev. 616 (1950).

Contrasted with this apparent finding that Roby ceased to act as a department chairperson (and therefore, logically, ceased to be entitled to released time benefits) no later than January 1, 1976, is the language of the arbitrator's clarification decision quoted previously. That phrasing seems to clearly state that all grievants were entitled to released-time compensation up to the time at which the merger occurred, which was obviously later than January 1, 1976.

Due to this contradiction, we can only find that the arbitrator's decision is patently ambiguous. Our only recourse is to require that the matter be remanded to the arbitrator for clarification.

■■ Upon undertaking such action, the arbitrator should simply state whether his award intended that Roby be entitled to released time compensation through the fall semester 1975, or whether the award was intended to find Roby eligible for such benefits until that time at which the merger was effectuated. Since the parties are in agreement as to the date upon which the merger occurred, the arbitrator's finding will indisputably resolve the parties' disagreement.[3] No additional evidence should or can be presented upon this remand, since its purpose is merely to give the arbitrator a *third* opportunity to clearly indicate his decision on the submitted grievance. The taking of evidence at such a function is inappropriate, since the arbitrator already has, albeit unclearly, resolved the dispute. Thus, that portion of the circuit court's order which allows the taking of additional evidence is vacated.

For these reasons, the matter is remanded to the arbitrator for proceedings consistent with this opinion.

Affirmed in part; vacated in part.

HARTMAN, P. J., and STAMOS, J., concur.

---

[3] As voiced to the parties at oral argument, this court is at a loss as to why this case could not have been resolved by the parties at an informal conference, rather than taking what would seem to be a simple problem to the already burdened judiciary.