CHARLES SPOONER *et al.*, Plaintiffs-Appellants, v. ARMOUR-DIAL *et al.*, Defendants-Appellees.

Second District   No. 84—253

Opinion filed March 26, 1985.

Kenneth L. Kaergard, of Neri & Hochberg, Ltd., of St. Charles, for appellants.

Alan E. Lapidus and Gwenda M. Burkhardt, both of Vedder, Price, Kaufman & Kammholz, of Chicago, for appellees.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiffs, Charles and Clara Spooner, filed a five-count complaint, later amended and supplemented, against defendants, Armour-Dial, Inc., and four of its supervisory employees, seeking damages for intentional infliction of emotional distress, count I, tortious interference with occupation, count II, libel and slander, count III, bailment, count IV, and loss of consortium, count V, arising out of Charles Spooner's employment by defendant, Armour-Dial. This appeal is from an order granting defendants' motion for summary judgment on all counts.

Plaintiffs raise two issues on appeal: (1) whether the trial court, relying on *Suddreth v. Caterpillar Tractor Co.* (1983), 114 Ill. App. 3d 396, 449 N.E.2d 203, improperly concluded that because all of plaintiffs' claims were covered under the grievance procedures of a collective-bargaining agreement between Armour-Dial and plaintiff Charles Spooner's union, plaintiffs could not bring these actions in circuit court independent of any contract remedy based upon the collective-bargaining agreement; and (2) assuming an independent action exists, whether genuine issues of material fact are present which prevent the granting of summary judgment.

Plaintiff Charles Spooner was employed as a welder-fitter by Armour-Dial, Inc., at its Montgomery, Illinois, facility. Since 1964, plaintiff has been a member of either Amalgamated Meat Cutters and Butcher Workmen of North America, AFL-CIO, Local P-100, or its successor union, United Food and Commercial Workers International Union, AFL-CIO & CLC, Local P-500. During plaintiff's period of employment with Armour-Dial, there were in effect certain collective bargaining agreements between Armour-Dial and the two labor unions which governed the terms and conditions of employment of Armour-Dial employees. Particularly relevant to the instant appeal are the collective bargaining agreement provisions which provide certain procedures to be utilized in resolving employee grievances and disputes.

Collective-bargaining agreement article XXI, entitled "Adjustment of Grievances," section 21.2, provides in relevant part:

"21.2 Grievance Steps.

Should differences arise between the Company and the Union, or between the Company and employees, or between employees of the Company because of Union or non-Union affiliation, or should trouble of any kind arise in the plant, there shall

be no strike, stoppage, slowdown, suspension of work or boycott on the part of the Union or its members or the employees, or lockout on the part of the Company, on account of such dispute, until such matters have been processed through the grievance procedure ***."

Subsections (a) through (d) of section 21.2 set forth a three-step procedure for the filing of employee grievances, followed by a final step pursuant to which the matter is submitted to binding arbitration. The first step provides that an employee may initiate these procedures by filing a grievance which can later be appealed by the grievance committee under steps two, three and the final step if no settlement is reached under the preceding steps. The final step allows arbitration by an impartial arbitrator pursuant to section 21.4, which provides in relevant part:

"21.4 Arbitration.

(a) Arbitration shall be the final step with respect to the classes of grievances referred to in this Section and shall be provided through an Arbitrator chosen by the parties.

* * *

(f) There shall be no appeal from the Arbitrator's decision, which shall be final and binding on the Union and its members, the employees or employee involved, and the Company."

Plaintiffs' amended and supplemented complaint, bill of particulars and supplemental bill of particulars specifically set forth the alleged conduct of defendants underlying the five theories of recovery advanced by plaintiffs in counts I through V.

Count I alleges that plaintiff Charles Spooner suffered severe emotional distress as a result of defendants' extreme and outrageous conduct. Plaintiff delineated approximately 16 specific instances of alleged harassment by defendants, within the context of the employment relationship, which resulted in his suffering severe emotional distress. Generally, these allegations of harassment included accusations by one of Armour-Dial's supervisory employees that plaintiff had been drinking on the job and had been abusive to his supervisory employees, which resulted in his termination from employment; a conspiracy by defendants to keep plaintiff from being reinstated at his former job; Armour-Dial's failure to reimburse plaintiff for medical expenses and back pay; various and repeated warnings given to plaintiff by Armour-Dial's supervisory employees concerning his conduct in the workplace; a statement made by one of plaintiff's superiors that plaintiff had requested several female employees to go out drinking

with him at lunch; Armour-Dial's wrongful termination of plaintiff's employment for theft of company product; and allegations by plaintiff that Armour-Dial employees had removed certain items of his personal property from his employee locker which were never returned to him.

Plaintiff filed grievances pursuant to the provisions of his collective-bargaining agreement on approximately 13 of his specific allegations of misconduct by defendants. Two of these grievances were ultimately submitted to arbitration and settlements were reached. The remaining grievances were denied by the grievance committee and not appealed through the grievance process by plaintiff. Of the remaining three allegations of misconduct, one was the subject of a charge with, and denied by, the National Labor Relations Board; and no action was taken by plaintiff in response to the final two alleged acts of misconduct by defendants.

Count II of the complaint alleges that Armour-Dial's supervisory employees tortiously interfered with plaintiff's occupation. In support of this count, plaintiff alleges the same instances of misconduct underlying his intentional infliction of emotional distress claim.

Count III, which asserted libel and slander as a theory of recovery, related to testimony given by one of Armour-Dial's employees at an arbitration hearing regarding the reasons for the termination of plaintiff's employment, to a memorandum received in evidence at the arbitration hearing which repeated the same reasons, and to a comment made by one of the individual defendants to a union steward on April 23, 1979, that if plaintiff was trying to take some of the female employees out drinking at noon, he should stop because he would get in trouble.

Count IV alleged that Armour-Dial was liable for certain items of plaintiff's personal property valued at $850 which had been removed from his employee locker sometime after his employment was terminated in June 1977 and which were never returned to him when he was later reinstated, following arbitration, in November 1978.

Count V, brought by plaintiff Clara Spooner alleged loss of consortium as a result of defendants' conduct directed against her husband, as asserted in counts I through IV. Plaintiffs agree below and on appeal that Clara Spooner's action for loss of consortium is contingent on whether Charles Spooner may maintain his actions.

Defendants' original motion for summary judgment was denied. A motion to reconsider was later filed by defendants in which they relied on the newly filed appellate court decision of *Suddreth v. Caterpillar Tractor Co.* (1983), 114 Ill. App. 3d 396, 449 N.E.2d 203, not

previously considered by the trial court.

The trial court granted defendants' motion for summary judgment relying principally on this court's decision in *Suddreth v. Caterpillar Tractor Co.* (1983), 114 Ill. App. 3d 396, 449 N.E.2d 203. In *Suddreth*, we followed the holding in *Cook v. Caterpillar Tractor Co.* (1980), 85 Ill. App. 3d 402, 407 N.E.2d 95, that an action for retaliatory discharge brought by an employee protected by a collective-bargaining agreement which provides specific grievance procedures to ensure discharge from employment only for just cause could not be brought where the employee failed to exhaust his remedies under the collective-bargaining agreement. Plaintiffs, in the trial court, had argued that the *Suddreth* holding was limited to the tort of retaliatory discharge, and the case was not precedent to bar their distinctly different tort and property loss claims involved here.

By the time this case was before us on oral argument, our supreme court had rendered its decision in *Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143. In *Midgett*, the court held that in order to provide a complete remedy it was necessary that the victim of a retaliatory discharge be given an action in tort, independent of any contract remedy the employee may have based on the collective-bargaining agreement. (105 Ill. 2d 143, 149-52.) Thus, our holding in *Suddreth* was incorrect. Now the parties' arguments are transposed, with the plaintiffs embracing the rationale of *Midgett*, arguing it extends to the claims asserted in this case, while defendants seek to limit the applicability of *Midgett* to the tort of retaliatory discharge.

■ The issue before us is whether the plaintiffs may bring the tort actions of intentional infliction of emotional distress, tortious interference with occupation, and libel and slander; a bailment action; and a loss of consortium action based upon the tort claims, independent of the collective-bargaining agreement between Armour-Dial and plaintiff's (Charles Spooner) union, which contains grievance procedures for the subject matter of these actions. Plaintiffs have not argued that the underlying acts on which their causes of action are premised do not come within the provisions of the collective-bargaining agreement pertaining to adjustment of grievances. Rather, plaintiffs contend that separate actions, as alleged, can arise in a setting which normally is subject to the law governing labor relations, because here, the remedy for the torts and bailment alleged is not compensable in a labor contract proceeding.

Initially, we must determine whether the holding in *Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, controls our decision in this case. We hold it does not. In *Midgett*, our supreme court stated:

"Applying this reasoning here, there is no reason to afford a tort remedy to at-will employees but to limit union members to contractual remedies under their collective-bargaining agreements. (*Wyatt v. Jewel Cos.* (1982), 108 Ill. App. 3d 840, 841-42.) Generally, if a union employee's grievance goes to arbitration and the arbitrator does not find just cause for the employee's discharge, the remedy will be simply job reinstatement and full back pay. (See Silzer, *Workers' Compensation: Retaliatory Discharge of Employees Covered by a Collective Bargaining Agreement* (1981), 70 Ill. B.J. 164, 166.) If there is no possibility that an employer can be liable in punitive damages, not only has the employee been afforded an incomplete remedy, but there is no available sanction against a violator of an important public policy of this State. It would be unreasonable to immunize from punitive damages an employer who unjustly discharges a union employee, while allowing the imposition of punitive damages against an employer who unfairly terminates a nonunion employee. *The public policy against retaliatory discharges applies with equal force in both situations.* (That Illinois has a strong public policy to insure the protection of workers covered by the Workers' Compensation Act is clear. Section 6 of the Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.6) requires employers to post printed notices containing information concerning the Act which is necessary to aid employees to safeguard their rights under the Act in the event of injury. Employers are required to file reports of injuries and other matters with the Commission, and the failure to do so constitutes a petty offense. Section 26 (Ill. Rev. Stat. 1981, ch. 48, par. 138.26) provides that in the event of any violation of the Act, which is declared to be a petty offense, the Attorney General and the State's Attorney of each county, upon the request of the Industrial Commission, shall enforce the penalties prescribed in the Act.)" (Emphasis added.) (105 Ill. 2d 143, 150-51.)

It is apparent from the above-quoted language that the court was concerned with the important public policy in Illinois against retaliatory discharges. There is no indication, however, that matters other than retaliatory discharge, which may be the subject matter of a grievance procedure and which also may be pleaded as a tort or bailment action, may be proceeded on independent of the contractual remedy provided in the collective-bargaining agreement. Although a similarity exists in the tort actions pleaded here and the tort of retaliatory discharge in

that punitive damages are sought and normally would not be available under the collective-bargaining agreement (105 Ill. 2d 143, 150), we believe that the court in *Midgett* considered the possible punitive damage award as a necessary remedy only in conjunction with the strong public policy embraced against retaliatory discharges. In short, *Midgett* did not address the issue presented here, nor do we conclude the language of that opinion supports plaintiffs' position.

Nevertheless, plaintiffs also maintain that the language of the collective-bargaining agreement "does not mandate utilization of the grievance procedure as to matters not involving labor action (strike, work stoppage or slowdown, suspension of work), nor does it restrict the employee to the grievance procedure as an exclusive remedy when no strike related action is being taken."

The entire collective-bargaining agreement, labeled the "Master Agreement," has not been made a part of the record. However, the parties agree that article XXI, "Adjustment of Grievances," providing for the grievance procedures, is controlling and is contained, in pertinent part, in the record. Article XXI, 21.2, "Grievance Steps," states, *inter alia*, that:

"21.2 Grievance Steps.

Should differences arise between the Company and the Union, or between the Company and employees, or between employees of the Company because of Union or non-Union affiliation, or should trouble of any kind arise in the plant, there shall be no strike, stoppage, slowdown, suspension of work or boycott on the part of the Union or its members or the employees, or lockout on the part of the Company, on account of such dispute, until such matters have been processed through the grievance procedure provided below ***."

The grievance provision then further specifies a three-step procedure culminating in a final step of binding arbitration, with no appeal if the parties fail to reach a settlement.

The extremely broad grievance provision of the collective-bargaining agreement, referred to above, provides, relevant to the parties here, that "[s]hould differences arise *** between the Company and employees *** there shall be no strike, stoppage *** until such matters have been processed through the grievance procedure provided ***." First, the subject matter which forms the basis of all of plaintiffs' tort and bailment actions against the defendants falls within the broad language of the collective-bargaining agreement, which includes "differences *** between the Company and employees." Plaintiffs have not contended otherwise. However, plaintiffs do maintain that

the agreement does not "represent itself to be the exclusive remedy of the parties." We reject this argument, as the courts have consistently held that where, as in the present case, a collective-bargaining agreement establishes a grievance and arbitration procedure, the agreement must be construed to establish these procedures as the exclusive mode of redress for the enforcement of the terms of the employment contract, unless the parties, through the agreement, expressly agree otherwise. *Meeks v. South Bend Freight Lines, Inc.* (1980), 85 Ill. App. 3d 755, 758, 407 N.E.2d 228.

■ Plaintiffs also contend that the grievance procedure must be followed "prior to the commencement of any work action," and the grievance and arbitration procedure is implemented "only as a condition precedent to such work action." In essence, plaintiffs appear to argue that the grievance procedure of the collective-bargaining agreement does not require that all disputes be resolved according to the contract grievance procedure, but only requires that before work action can be taken there must be compliance with the contractual grievance procedure. As Charles Spooner did not undertake work-related action, plaintiffs contend he was not required to submit the tort and bailment actions to the grievance procedure. This argument is meritless.

Such an interpretation of the grievance procedure provision of the collective-bargaining agreement would render the grievance provisions inapplicable in all situations except where work action is contemplated. Not only does plaintiffs' interpretation run counter to the laudable purpose of collective-bargaining agreements in settling employee grievances in a uniform and exclusive method, but also it is not supported by a full reading of the applicable parts of the collective-bargaining agreement contained in the record. The provision against work action does not narrow the grievance procedure, but instead prevents any such work action until the matter has been processed through the grievance procedure provided. In fact, Charles Spooner did utilize the grievance procedure for most of the grievances which he has now included as the basis for the actions in his complaint. His own past actions belie the thrust of this present argument.

Having concluded that the holding in *Midgett* is authority only for allowing an action in tort for a retaliatory discharge independent of any contract remedy an employee may have based on a collective-bargaining agreement, and that the subject matter of plaintiffs' tort and bailment actions fall within the exclusive grievance provisions of the agreement here, we must further determine whether these tort and bailment claims are thereby barred in this suit by Charles Spooner's

failure to exhaust the grievance and arbitration remedies provided in the collective-bargaining agreement.

Generally, where a collective-bargaining agreement establishes a grievance and arbitration procedure, the employee wishing to assert grievances which are the subject matter of the grievance procedure must use the contract grievance procedure agreed upon by employer and union. (*Republic Steel Corp. v. Maddox* (1965), 379 U.S. 650, 13 L. Ed. 2d 580, 85 S. Ct. 614; *Meeks v. South Bend Freight Lines, Inc.* (1980), 85 Ill. App. 3d 755, 407 N.E.2d 228.) As noted by the United States Supreme Court in expressing Federal policy in *Republic Steel Corp. v. Maddox* (1965), 379 U.S. 650, 13 L. Ed. 2d 580, 85 S. Ct. 614:

> "A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it. In addition to cutting across the interests already mentioned, it would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances. If a grievance procedure cannot be made exclusive, it loses much of its desirability as a method of settlement. A rule creating such a situation 'would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements.' (Citation.)" 379 U.S. 650, 653, 13 L. Ed. 2d 580, 583-84, 85 S. Ct. 614, 616-17.

There is authority from other jurisdictions that an employee's failure to exhaust his grievance and arbitration remedies bars a claim in court framed in terms of tort, where the acts complained of constitute potential grievances under the collective-bargaining agreement. (*Dinger v. Anchor Motor Freight, Inc.* (S.D.N.Y. 1980), 501 F. Supp. 64 (complaint for intentional infliction of emotional distress dismissed); *Johnson v. Hydraulic Research & Manufacturing Co.* (1977), 70 Cal. App. 3d 675, 139 Cal. Rptr. 136 (complaint for conspiracy, wrongful interference with contractual relations, and defamation dismissed); see also *Morris v. Owens-Illinois, Inc.* (S.D. W. Va. 1982), 544 F. Supp. 752).) To the contrary, one court has held, without analysis, that an employee covered by a collective-bargaining agreement providing for a grievance procedure could bring certain tort actions without exhaustion of contract remedies because the remedies sought were not available under the union grievance procedure. *Gretencord v. Ford Motor Co.* (D. Kan. 1982), 538 F. Supp. 331.

■ We hold that the better-reasoned authority is that the tort and bailment actions pleaded here are barred by plaintiff Charles

Spooner's failure to exhaust the grievance and arbitration remedies provided in the collective-bargaining agreement covering the subject matter forming the basis of these actions. Requiring union members to exhaust their contract remedies is part of the trade-off such employees accept in exchange for the many rights that they will benefit from, and rights which the employer gives up. No overriding public policy is involved here, as in the case of a retaliatory discharge, which would allow an action in tort, independent of the contract remedy the employee has based upon the collective-bargaining agreement. For example, where claims against employers are founded upon violations of Federal statutory rights, the United States Supreme Court has allowed actions to be brought independent of the collective-bargaining agreements. (See *Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, 151-52.) Plaintiffs have not shown violations of Federal or State statutory rights reflecting important public policy which would support an independent action. Although plaintiffs have relied on *Farmer v. United Brotherhood of Carpenters & Joiners of American, Local 25* (1977), 430 U.S. 290, 51 L. Ed. 2d 338, 97 S. Ct. 1056, contending that the Supreme Court recognized that "labor claims and tort claims are independent actions which can be resolved in different forums as to remedies sought," *Farmer* was decided on preemption grounds and did not involve a union employee suing his employer in tort for conduct covered by the grievance procedure of a collective-bargaining agreement. The *Farmer* decision is inapposite.

Charles Spooner did not submit to the grievance procedure the claims underlying the actions for libel and slander, bailment, and certain of the allegations in the tort claims for intentional infliction of emotional distress and interference with occupation, and is barred from bringing these actions for failure to exhaust the remedies provided in the collective-bargaining agreement. Moreover, the collective-bargaining agreement contains provisions expressly providing for a three-step grievance procedure culminating in a final step of arbitration from which there shall be no appeal. Thus, even for those claims which Spooner did submit to the grievance procedure, some of which he ultimately did not pursue to completion and others which he settled or was given an award by the arbitrator, the collective-bargaining agreement expressly provides that any settlement or arbitrator's decision shall be final and binding without appeal.

■ Where a binding grievance and arbitration procedure is established by a collective-bargaining contract, a decision rendered pursuant to such procedure may not be reviewed by the courts (*Fredman Brothers Furniture Co. v. Retail Store Employees Union, Local 575*

(1979), 70 Ill. App. 3d 518, 521, 388 N.E.2d 849; *Turner v. Steffke Freight Co.* (1964), 49 Ill. App. 2d 76, 82-83, 198 N.E.2d 696), unless a party attacking the decision can demonstrate fraud, partiality, or misconduct on the part of the arbitrator (*Board of Trustees v. Cook County College Teachers Union, Local 1600* (1981), 96 Ill. App. 3d 913, 917, 422 N.E.2d 115; *Fredman Brothers Furniture Co. v. Retail Store Employees Union, Local 575* (1979), 70 Ill. App. 3d 518, 388 N.E.2d 849). No allegations are made here attacking the settlements or arbitrators' decisions, and those matters are therefore not reviewable in the courts.

For the foregoing reasons, we conclude that judgment was properly entered for defendants even though the trial court relied on an incorrect reason. If legally correct, the judgment of the trial court may be sustained on any ground justified in the record. *Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9; *Gust v. Village of Skokie* (1984), 125 Ill. App. 3d 102, 108, 465 N.E.2d 696.

Affirmed.

NASH, P.J., and STROUSE, J., concur.