**Leroy KIRK and Donald Stuart, Plaintiffs-Appellants,**

v.

**BOARD OF EDUCATION OF BREMEN COMMUNITY HIGH SCHOOL DISTRICT, NO. 228, COOK COUNTY, ILLINOIS, Defendant-Appellee.**

Nos. 84–2519, 84–2520.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 11, 1986.

Decided Jan. 22, 1987.

---

Michael B. Erp, Katz, Friedman, Schurr & Eagle, Chicago, Ill., Irene L. Hill, EEOC–Appellate Services Div., Washington, D.C., for plaintiffs-appellants.

Alan T. Sraga, Scariano, Kula & Assoc., Chicago Heights, Ill., for defendant-appellee.

Before CUDAHY and POSNER, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

The primary question presented in this appeal is whether the district court erred in granting the defendant's motion to dismiss on the ground that the plaintiffs' action under Title VII of the Civil Rights Act of 1964 was barred by the doctrine of *res judicata.* For the reasons stated below,

we find that the dismissal[1] was improper. Accordingly, the judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

## I.

Plaintiffs LeRoy Kirk and Donald Stuart were formerly employed as tenured instructors at high schools operated by the defendant, the Board of Education of Bremen Community High School District, No. 228, Cook County, Illinois ("the Board"). Both are male. Stuart taught health, physical education and driver education and Kirk taught physical education. As part of a reduction in force, the plaintiffs and six other teachers were laid off by the Board on March 22, 1982. Some female faculty members with less seniority were retained. The stated reason for the Board's departure from seniority order in laying off the plaintiffs was their inability to supervise female high school students when the students were in the locker room.

After their terminations, both plaintiffs filed charges of sex discrimination with the Illinois Equal Employment Opportunity Commission (the "Illinois EEOC"). Stuart also filed a grievance with the Board asserting sex discrimination in violation of the collective bargaining agreement then in force between the Board and the teacher's union, the Joint Faculty Association for Bremen District No. 228 (the "JFA" or "Union"). In March of 1982, the Union filed grievances with the Board on behalf of the discharged teachers. Both plaintiffs also filed charges of sex discrimination with the United States Equal Employment

Opportunity Commission (the "United States EEOC") on July 6, 1982.

On March 30, 1982, the Union filed a suit against the Board in the Circuit Court of Cook County, Illinois, Chancery Division. The suit sought (1) an injunction against the terminations, and (2) either a declaration that the Board's action violated the public hearing requirement of Ill.Rev.Stat., Ch. 122, ¶ 24-12 (Smith-Hurd 1981),[2] or an order compelling arbitration. The Cook Circuit Court ordered the parties to proceed with arbitration.

Arbitration began on an expedited basis in August of 1982. The parties agreed at the outset not to litigate the sex-discrimination issues and to allow those claims to proceed in other fora. The Stuart grievance, which charged sex discrimination, was withdrawn by agreement of the parties. During arbitration, the dispute was narrowed by agreement of the parties to these questions: (1) whether the Board's termination action was based on economic necessity, and, if so, (2) whether the Board violated the collective bargaining agreement by failing to hold a public hearing before terminating the teachers.[3] The arbitrator found that economic necessity was the basis for the dismissals and that they were void because the failure to conduct a public hearing violated the parties' contract and ¶ 24-12. The arbitrator then ordered reinstatement of the dismissed teachers on August 20, 1982.

On October 22, 1982, the Board filed an action in the Circuit Court of Cook County, Illinois, Law Division, seeking to vacate the arbitrator's decision.[4] The plaintiffs in the

---

1. Although the district court's ruling was in response to a motion to dismiss, it had before it matters outside the pleadings, including the pleadings and judgments in prior state court litigation. Thus, the court's disposition of the motion may have constituted the granting of summary judgment. See Fed.R.Civ.P. 12(c). Because the res judicata issue in this case does not involve disputed issues of fact or conflicting factual inferences, the precise nature of the district court's disposition of the motion does not affect our analysis.

2. ¶ 24-12 provides, in pertinent part:

... Whenever the number of honorable dismissal notices based upon economic necessity exceeds 5, or 150% of the average number of teachers honorably dismissed in the preceding 3 years, whichever is more, then the board shall hold a public hearing on the question of the dismissals....

3. The collective bargaining agreement incorporated ¶ 24-12.

4. *Board of Education v. Bremen District No. 228 Joint Faculty Association,* No. 82 L 50378 (Circuit Court of Cook County, Law Division, January 17, 1983), *aff'd,* 114 Ill.App.3d 1051, 70 Ill.

instant action were named as defendants in the Board's complaint. On October 29, 1982, the defendants in the state action, including the plaintiffs in the instant case, answered the Board's complaint and counterclaimed for enforcement of the arbitrator's decision. The Cook Circuit Court granted summary judgment for the Union and the terminated teachers and ordered enforcement of the arbitrator's decision on January 17, 1983. On May 20, 1983, the Illinois Appellate Court affirmed. *Board of Education v. Bremen District No. 228 Joint Faculty Association*, 114 Ill.App. 1051, 70 Ill.Dec. 613, 449 N.E.2d 960 (1983), *aff'd in part, rev'd in part,* 101 Ill.2d 115, 77 Ill.Dec. 783, 461 N.E.2d 406 (1984).

The Appellate Court's affirmance noted that the arbitrator did not have the authority to order reinstatement, but upheld the decision on the theory that the arbitrator's decision that the terminations were void was binding, resulting in the rehiring of the teachers "by operation of law." 70 Ill.Dec. at 1057, 449 N.E.2d at 966. The Illinois Supreme Court affirmed in part and reversed in part. 101 Ill.2d 115, 77 Ill.Dec. 783, 461 N.E.2d 406. Both of the reviewing courts agreed that the arbitrator's substantive decision, that the terminations were void for lack of the requisite public hearing, was correct, or at most was a "mere error of judgment" not subject to court correction. 70 Ill.Dec. at 1056–57, 449 N.E.2d at 965–66, 77 Ill.Dec. at 786, 461 N.E.2d at 409. Both also held that the arbitrator was without authority to order reinstatement. 70 Ill.Dec. at 1057, 449 N.E.2d at 966, 77 Ill.Dec. at 786, 461 N.E.2d at 409. However, the Illinois Supreme Court disagreed with the conclusion of the Illinois Appellate Court that the teachers were rehired by operation of law and reversed on this point. 77 Ill.Dec. at 786, 461 N.E.2d at 409. Thus the plaintiffs achieved a somewhat pyrrhic victory, in

that all of the fora where they pressed their claims agreed that their terminations were unlawful, yet they were ultimately denied any remedy.

While the state litigation was pending, the plaintiffs received their right-to-sue letters from the United States EEOC on May 25, 1983. On August 25, 1983, Stuart and Kirk filed separate suits in federal district court under § 706(f)(1) of Title VII of the Civil Rights Act of 1964, *codified as amended* at 42 U.S.C. § 2000e–5(f)(1) (1982). The plaintiffs alleged that the Board had excluded them from their teaching positions on the basis of sex, and they sought declaratory, injunctive, and monetary relief, as well as attorney's fees. The cases were consolidated and then stayed pending a decision from the Illinois Supreme Court on the propriety of the arbitrator's award. After the Illinois Supreme Court issued its decision, the Board moved to dismiss the plaintiffs' complaints on the ground that the doctrine of res judicata barred the Title VII claims. A magistrate recommended that the motion be denied. The district court disagreed, in an order issued August 6, 1984, relying on *Marrese v. American Academy of Orthopaedic Surgeons*, 726 F.2d 1150 (7th Cir.1984), *reversed*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985): [5]

Since plaintiffs had a "full and fair opportunity" to utilize the available Illinois law against employment discrimination based on sex (e.g., Ill. Const. art. 1, § 18 (1970); Ill.Rev.Stat. ch. 122, ¶ 24–4 (1980); Ill.Rev.Stat. ch. 68, ¶ 1–101 *et seq.* (1980) (Illinois Human Rights Act)), they are now barred, under *Marrese*, from raising employment discrimination under Title VII in the present case. Although plaintiffs were only seeking to enforce the arbitrator's decision in the state court litigation, this Court has no choice,

---

Dec. 613, 449 N.E.2d 960 (1983), *aff'd in part, rev'd in part,* 101 Ill.2d 115, 77 Ill.Dec. 783, 461 N.E.2d 406 (1984).

**5.** We certainly sympathize with the plight of the district court in this case. However, just as it

felt bound to apply our decision in *Marrese,* we are bound to apply the Supreme Court's holding that the federal preclusion principle announced in our opinion in that case does not apply to cases governed by 28 U.S.C. § 1738 (1982).

due to the law in this Circuit, but to grant defendant's motion to dismiss.[6]

This appeal followed.

## II.

The primary question in the case before us is whether the plaintiffs' failure to file a sex-discrimination count as a counterclaim in the suit initiated by the Board to set aside the arbitrator's award precludes this Title VII action. We find that there is no preclusion because, under Illinois law, at least two basic requirements for *res judicata*[7] are lacking, namely: (1) that the suits involve the same "cause of action"; and (2) that there was a decision on the merits.

█ To determine whether this Title VII action is barred by *res judicata*, we must of course · look *initially* to federal law. One of the first acts passed by the newly constituted Congress following ratification of the Constitution directed the federal judiciary to accord the same full faith and credit to state-court judgments that would apply in the courts of the states in which they were rendered. Act of May 26, 1790, ch. 11, 1 Stat. 122. Its current version, codified at 28 U.S.C. § 1738, provides, in pertinent part:

The records and judicial proceedings of any court of a State, Territory or Possession [of the United States], or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

Such ... records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738 (1982).

Thus, we must give the *same* preclusive effect to state-court judgments that those judgments would be given in the courts of the states from which they emerged. *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274 (1985). *Marrese* makes clear that federal courts can give neither less *nor more* preclusive effect to a state court judgment than would these state courts. Although Congress could

**6.** Because of its ruling on the *res judicata* question, the district court did not consider the Board's argument that the Illinois courts have determined that sex is a bona fide factor in the performance of duties attendant to the teaching positions for which plaintiffs would otherwise be qualified. Of course, whether the bona fide occupational qualification ("BFOQ") defense to a Title VII claim is made out presents a federal question; thus the Illinois authority cited by the Board does not necessarily control. The Board renews its BFOQ argument in its brief to this court. The case does present an interesting BFOQ issue. *Compare Backus v. Baptist Medical Center,* 510 F.Supp. 1191 (E.D.Ark.1981) (requirement that labor and delivery nurses in obstetrics and gynecology unit be female was BFOQ in light of patients' privacy interests and hospital's concern that it might face charges of molestation unless female nurse was also present where male nurse was assigned), *vacated as moot,* 671 F.2d 1100 (8th Cir.1982) *with Bagley v. Watson,* 579 F.Supp. 1099 (D.Or.1983) (preference of male inmates that searches be conducted by male guards not sufficient to es-

tablish BFOQ defense to charge that female guards were discriminated against). However, we cannot reach it on this record. The BFOQ issue in Title VII cases is largely factual and cannot be decided without further development of the record and the valued views of the learned trial judge.

**7.** In this opinion, the term *res judicata* refers to "claim preclusion," i.e., the preclusive effect of a judgment in foreclosing litigation of matters that were or could have been raised in an earlier suit. This concept is to be distinguished from "collateral estoppel" (also referred to as "issue preclusion"), which refers to the effect of a judgment in foreclosing relitigation in a subsequent action of an issue of law or fact that has been actually litigated and decided in the initial action. *See Marrese v. American Academy of Orthopedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 1329 n. 1, 84 L.Ed.2d 274 (1985); *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 466 n. 6, 102 S.Ct. 1883, 1889 n. 6, 72 L.Ed.2d 262 (1982).

provide for exceptions to Section 1738, it has not done so for Title VII. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

■ The relevant jurisdiction in the instant case is Illinois, which follows the traditional *res judicata* rule:

[A] final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action.... The doctrine of *res judicata,* in all cases where the second suit is upon the same cause of action and between the same parties or their privies as the former action, extends not only to the questions actually litigated and decided, but to all grounds of recovery or defense which might have been presented.

*People v. Kidd,* 398 Ill. 405, 75 N.E.2d 851, 853–54 (1947) (citations omitted).

Thus, for *res judicata* to apply, there must be an identity of the cause of action in the two actions, and a final judgment on the merits in the earlier suit. *See Lee v. City of Peoria,* 685 F.2d 196, 199 (7th Cir.1982). Neither of these elements is present here.

A. The Title VII Suit Does Not Involve the Same "Cause of Action" as the State Litigation

Under Illinois law, a judgment bars a later suit only if it is part of the same "claim, demand, or cause of action" that was involved in the earlier suit. *Housing Authority v. Young Men's Christian Association,* 101 Ill.2d 246, 78 Ill.Dec. 125, 461 N.E.2d 959 (1984); *Spiller v. Continental Tube Co.,* 95 Ill.2d 423, 69 Ill.Dec. 399, 447 N.E.2d 834 (1983); *Fountas v. Breed,* 118 Ill.App.3d 669, 74 Ill.Dec. 170, 455 N.E.2d 200 (1st Dist.1983); *Baird & Warner, Inc. v. Addison Industrial Park,*

*Inc.,* 70 Ill.App.3d 996, 26 Ill.Dec. 1, 387 N.E.2d 831 (1st Dist.1979). The rule, unfortunately, is more easily stated than applied; the difficulty is determining what constitutes a single "claim, demand, or cause of action."

The parties are in sharp disagreement over whether the Illinois courts follow the "same transaction" or the "same evidence" test in making this inquiry. To the extent that the tests differ,[8] we believe that Illinois courts follow the "same evidence" test. In *Fountas,* the Illinois Appellate Court noted that "[t]wo claims are not necessarily the same cause of action merely because they arose out of the same general transaction or set of facts." 74 Ill.Dec. at 173, 455 N.E.2d at 203. Other Illinois decisions have repeatedly noted that the test utilized to determine whether the same cause of action is involved is "whether the underlying facts are identical in both actions or whether the same evidence would sustain both actions." *See Gittings v. Hilton,* 124 Ill.App.3d 594, 79 Ill.Dec. 935, 937, 464 N.E.2d 839, 841 (3d Dist.1984); *Cranwill v. Donahue,* 99 Ill.App.3d 968, 55 Ill. Dec. 362, 364, 426 N.E.2d 337, 339 (3d Dist.1981); *Bass v. Scott,* 79 Ill.App.3d 224, 34 Ill.Dec. 561, 563, 398 N.E.2d 236, 238 (1st Dist.1979); *Rotogravure Service, Inc. v. R.W. Borrowdale Co.,* 77 Ill.App.3d 518, 32 Ill.Dec. 762, 768, 395 N.E.2d 1143, 1149 (1st Dist.1979).

Illinois cases applying (or, more importantly, declining to apply) *res judicata* are instructive more for their holdings than for the tests which they purport to apply. For example, in *Fountas,* the Illinois Appellate Court held that a wrongful death claim and a claim for funeral expenses were not part of the same cause of action as a suit brought by a decedent during his lifetime for medical malpractice. Although it could be said that the actions arose out of the "same transaction," *i.e.,* a physician's negli-

---

8. Defendants have alternatively phrased the test they advocate as the "same core of operative facts." As the reader will note, there is language in Illinois cases which suggests that the "same evidence" and "same core of operative facts" tests are the same. In any event, we are

less concerned with the label that the Illinois courts put on their analysis than with the way in which they apply the doctrine. As shown in the text, we believe that the Illinois courts would not apply the doctrine to bar the instant case.

gent treatment of the decedent, the court nonetheless held that they were separate and distinct causes of action, 74 Ill.Dec. at 173, 455 N.E.2d at 203.

Similarly, in *Redfern v. Sullivan*, 111 Ill.App.3d 372, 67 Ill.Dec. 166, 444 N.E.2d 205 (4th Dist.1982), the court held that a suit by a lessee seeking to enjoin his lessor from interfering with his possessory rights was not barred by a previous suit by the lessee for damages resulting from breach of the lease. According to the court:

> ... Causes of action are identical where the evidence necessary to sustain a second verdict would sustain the first, *i.e.*, where the causes of action are based upon a common core of operative facts....
>
> Here, counts I and II are based upon a different cause of action than that underlying the "second amended complaint"; the same evidence would not sustain both verdicts. Counts I and II seek injunctive relief against dispossession by the defendants. In order to obtain a favorable verdict on these counts, plaintiff would have to show: that his possessory rights were violated; that his legal remedies were inadequate; and that he will suffer irreparable injury if injunctive relief is not granted.... In order to obtain damages under the theory advanced in his "second amended complaint," plaintiff would need to show: that he had a contractual right to farm the land; that defendants breached the contract; and that plaintiff suffered damages as a result of the breach.

67 Ill.Dec. at 169, 444 N.E.2d at 208 (citations omitted).

In *Cranwill*, the plaintiff had been arrested and charged with drunken driving, in spite of the fact that he had passed a breathalyzer test. He initially brought a federal civil rights action and pendent state claims. This action was dismissed because plaintiff had not alleged a reckless or intentional disregard of his constitutional rights, and the dismissal was affirmed without published opinion by this court. 562 F.2d 53 (7th Cir.1977). The pendent claims were then dismissed for want of jurisdiction. *See* 55 Ill.Dec. at 367, 426 N.E.2d at 340. Subsequently, the plaintiff filed his state law claims in Illinois state court, alleging false arrest, false imprisonment, invasion of privacy, malicious prosecution and abuse of process. The state trial court held that the action was barred by *res judicata,* but the Illinois Appellate Court reversed, saying:

> Helpful to our analysis is a consideration of whether every fact necessary for the federal action is necessary to the cause at bar. In the prior action a necessary fact was the intentional deprivation or reckless disregard of constitutional rights. Indeed it was the failure to allege this necessary fact which caused the federal action to fail. Yet pleading this fact is wholly unnecessary to the instant action. Thus under both prongs of the *Kegerreis* [*Elmhurst v. Kegerreis,* 392 Ill. 195, 64 N.E.2d 450 (1945)] test, there is no identity of cause of action here present and *res judicata* principles are inapplicable.

55 Ill.Dec. at 366, 426 N.E.2d at 339.

■ We are convinced that, under the *res judicata* approach applied by the Illinois courts, plaintiffs' claim is not barred. We reach this conclusion regardless of whether we view the prior action as a review of the merits of the arbitrator's decision or simply an action to confirm or vacate the award, because the evidence necessary to sustain either action would differ radically from that required to support the Title VII claim.

If we view the action as having dealt with the merits of plaintiffs' claim under the Illinois School Code, the evidence necessary to sustain the action would have been that the Board acted on the basis of economic necessity, that it laid off the requisite percentage of tenured teachers, and that it did not hold the requisite public hearing.

■ If we view the second action as merely one to confirm or vacate the arbitrator's award, as defendant invites us to do, the evidence necessary to sustain the

claim would bear even less resemblance to that necessary for a Title VII claim. Under Illinois law, courts are generally forbidden to review the merits of an arbitral award. *Board of Trustees v. Cook County College Teachers Union, Local 1600,* 96 Ill.App.3d 913, 52 Ill.Dec. 434, 437, 422 N.E.2d 115, 118 (1st Dist.1981); *see also Board of Trustees v. Cook County Teachers Union Local 1600,* 74 Ill.2d 412, 24 Ill.Dec. 843, 847, 386 N.E.2d 47, 51 (1979). A court may vacate an award only for the following reasons: (1) fraud, corruption or evident partiality; (2) the arbitrator exceeded his authority; (3) gross mistake of law or fact; (4) plain mistake of law if the arbitration agreement requires the decision to be made according to law; or (5) mistake of law if the award shows on its face that the arbitrator intended to decide according to law but mistook or misconstrued it. *County Mutual Insurance Co. v. National Bank of Decatur,* 109 Ill.App.2d 133, 248 N.E.2d 299, 302 (4th Dist.1969).[9]

On the other hand, a Title VII claim would require evidence that plaintiffs were laid off on account of their sex.[10] Also, evidence relevant to the defense which the Board has asserted will relate to whether "substantially all" males are unable to perform the jobs which might have been available to plaintiffs, or whether the very fact of the plaintiffs' gender prevents them from effectively performing those jobs. *See Dothard v. Rawlinson,* 433 U.S. 321, 333–36, 97 S.Ct. 2720, 2729–30, 53 L.Ed.2d 786 (1977). In other words, the evidence relating to the substantive School Code claim, or to an action to set aside an arbitrator's award, is totally irrelevant to the Title VII claim. Under these circumstances, we are confident that the Illinois Courts would not hold an adjudication on the former as barring suit on the latter.

The cases relied upon by the defendant do not lead to a contrary conclusion. In *Hughey v. Industrial Commission,* 76 Ill.2d 577, 31 Ill.Dec. 787, 394 N.E.2d 1164 (1979), the Illinois Supreme Court held that a suit alleging repetitive trauma which arose from the same acts of the employer, assigning an employee to a job that re-

---

**9.** The statutory grounds of the Uniform Arbitration Act, Ill.Rev.Stat. ch. 10, ¶¶ 101–23 do not apply to review of arbitration awards in collective bargaining disputes involving public school employees. *Board of Education v. Chicago Teachers Union,* 86 Ill.2d 469, 56 Ill.Dec. 653, 654, 427 N.E.2d 1199, 1200 (1981) (citing Ill.Rev. Stat. ch. 10, ¶ 112(e)). The procedure in collective bargaining cases appears to have been changed by legislation which now provides that the appropriate forum in which to challenge such an arbitration is the Illinois Education Labor Relations Board. *See Chicago Board of Education v. Chicago Teachers Union,* 142 Ill. App.3d 527, 96 Ill.Dec. 759, 491 N.E.2d 1259 (1st Dist.1986). However, because this change followed the termination of the state court litigation, it is not relevant to our disposition of this appeal.

**10.** The elements of a *prima facie* case of discrimination required to give rise to an inference of discrimination in a case such as this are not clear. In the usual "failure to hire" case, the plaintiff must prove that he is a member of a minority group, he applied for a position for which he was qualified, he was rejected, and the position either remained open or was filled by a member of a non-minority group. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In translat-

ing this standard to the discharge context, courts have held that the plaintiff must prove membership in a minority group, satisfactory job performance, termination despite such satisfactory performance, and replacement by a member of a non-minority group. *Crawford v. Northeastern Oklahoma State University,* 713 F.2d 586 (10th Cir.1983); *Junior v. Texaco, Inc.,* 688 F.2d 377 (5th Cir.1982). It is unclear how these standards translate to either the "reduction in force" context or the "reverse discrimination" context, both of which are present here. At a minimum, it seems that some modification of the "minority group" circumstance is necessary in a reverse discrimination case. *See Murray v. Thistledown Racing Club, Inc.,* 770 F.2d 63 (6th Cir.1985) (Reverse discrimination plaintiff must produce evidence of "background circumstances [that] support the suspicion that the defendant is that unusual employer who discriminates against the majority.") However, we need not decide which of those circumstances relied upon by the courts in other cases are necessary to support an inference of discrimination in this case, since the Board has essentially admitted that it laid off plaintiffs rather than other teachers because the plaintiffs are male. The only issue remaining in the Title VII case is whether the plaintiffs' sex was a bona fide occupational qualification for the positions which otherwise would have been available to them.

quired heavy lifting, was barred by an un-appealed arbitrator's decision which had found that the employee failed to establish that he sustained an accidental injury arising out of and in the course of his employment. The court noted that:

> ... [T]he cause of action, if any existed, was the same in both instances: a right to compensation for the same hospital and medical expenses incurred in connection with, and the same disability resulting from, the same allegedly employment-related injury. Emphasizing different factors as having caused that disability does not transform that cause of action into a new or different one.

31 Ill.Dec. at 788–89, 394 N.E.2d at 1165–66.

The case is plainly distinguishable, in that almost exactly the same evidence was required to sustain the second action as would have sustained a decision in the first. Other cases relied upon by defendant similarly involve situations where basically the same facts are claimed to constitute more than one actionable wrong. Here, as we have noted, the absence of a hearing, crucial to the School Code charge, is irrelevant to the Title VII claim. Similarly, whether the Board chose the teachers to be laid off on the basis of their sex (and whether that basis was justified), while critical to the Title VII claim, is irrelevant to the issues which were before the arbitrator and/or the state courts.

The Board's general assertion that the two causes of action arise out of the same general transaction or core of operative fact—plaintiff's dismissals—is simply not enough, under Illinois law, to give preclusive effect to the former adjudication. The former claim was for dismissal *without a hearing*, the latter for *discriminatory action* in the dismissals. The circumstances of those dismissals which would support the two claims are simply too different. Thus, plaintiffs' failure to file a Title VII counterclaim to the Board's action does not prevent their assertion of a Title VII claim now.[11]

## B. The Judgment Was Not on the Merits

■ Another reason that the judgment in the state litigation is not a bar to the present suit is that it was not a judgment on the merits. The Illinois Supreme Court did not hold that plaintiffs had not stated a cause of action, nor that the arbitrator's decision with regard to the termination notices was incorrect. Rather, it merely held that the arbitrator was without authority to grant the remedy of reinstatement to plaintiffs. Under Illinois law, it is clear that a judgment is not "on the merits" if it is rendered because the plaintiff "seeks a form of remedy which turns out to be unavailable to him." *Foreman v. Martin*, 26 Ill.App.3d 1028, 325 N.E.2d 378, 379 (2d Dist.1975); *see also Rotogravure Service, Inc. v. R.W. Borrowdale Co.*, 77 Ill.App.3d 518, 32 Ill.Dec. 762, 395 N.E.2d 1143 (1st Dist.1979); *Fraley v. Boyd*, 83 Ill.App.2d 98, 226 N.E.2d 81, 83 (5th Dist.1967). Such is the case here. The plaintiffs sought the remedy of reinstatement from the arbitrator, but the Illinois Appellate courts held that he was not empowered to give it. The holding that the remedy was unavailable is not, under Illinois law, a decision on the merits.

The Board's attempts to distinguish Illinois cases holding that the unavailability of a particular remedy is not a judgment on the merits are unpersuasive. The Board, relying on the fact that *Rotogravure* allowed a claim for contract damages after a judgment for specific performance became impossible to enforce, implies that the doc-

---

11. We note that, under Illinois law, plaintiffs were not bound to file a counterclaim at all. *See Keith v. B & B Builders Supply, Inc.*, 101 Ill.App.3d 1123, 57 Ill.Dec. 514, 428 N.E.2d 1194 (3d Dist.1981) (plaintiff homeowners not required to bring their breach of warranty action against builder as counterclaim in builder's earlier suit on the construction contract). Illinois does not have a compulsory counterclaim rule like that found in the federal system. *See id.* 428 N.E.2d at 1196, 57 Ill.Dec. at 516. While this may lead to results that seem anomalous to those familiar with the federal system, it is Illinois law that we are required to apply in determining the *res judicata* question under 28 U.S.C. § 1738. *Marrese*, 105 S.Ct. 1331–32.

trine is limited to cases where the remedy, by reason of the factual situation, is physically impossible to achieve. However, this contention is directly refuted by *Foreman.* In that case, the plaintiff had sought and obtained an injunction directing a bank to stop payment on a certified check. On appeal, the Appellate Court reversed, holding that the bank had no right to stop payment. Plaintiff then brought a claim against the payee of the check for conversion. The Appellate Court held that this claim was not barred. Legal right, rather than physical impossibility, was the reason that the remedy was unavailable. This is precisely the fact situation in the present case.

Nor do we find any support in the cases for the Board's contention that where it is clear that the remedy is unobtainable, a suit to obtain it bars a subsequent suit for an appropriate one. While there may be other adverse consequences for filing a suit seeking a clearly unobtainable remedy, it does not appear that, under Illinois law, the bar of *res judicata* is among them.[12]

12. We are not as convinced as defendants are that the remedy was clearly foreclosed. As plaintiffs note, there had been an intervening statutory amendment which at least raised a substantial question about the arbitrator's authority. Furthermore, the Illinois Supreme Court reversed both the Cook Circuit Court and the Illinois Appellate Court in reaching its holding. Although the Appellate Court's holding was based on "operation of law" rather than the arbitrator's authority, it would have provided the plaintiffs with the relief they sought.

13. Our disposition of this case does not require us to decide whether a third element of *res judicata,* that the claim could have been brought in the earlier suit, would be met. Thus we need not decide whether federal courts have exclusive jurisdiction over Title VII actions, *see Valenzuela v. Kraft, Inc.,* 739 F.2d 434 (9th Cir. 1984) (jurisdiction over Title VII claims is exclusively federal); *Contra Peper v. Princeton University Board of Trustees,* 77 N.J. 55, 389 A.2d 465 (1978) (jurisdiction not exclusively federal), or the effect, if any, of such a holding under Illinois *res judicata* principles. *Cf. Henry v. Farmer City State Bank,* 808 F.2d 1228, 1235–36 (7th Cir.1986) (assuming *arguendo* that RICO is exclusively federal, but holding that failure to raise fraud claims as a defense to Illinois foreclosure proceedings nonetheless barred later RICO claim based on same allegedly fraudulent

An alternative way of looking at the Illinois Supreme Court's decision leads to the same conclusion. In essence, by holding that the arbitrator was without authority to award reinstatement, the Court held that he was acting beyond his jurisdiction. Ordinarily, a holding that a forum has no jurisdiction is not considered a holding on the merits. *See Pierce v. P.J.G. & Associates, Inc.,* 128 Ill.App.3d 471, 83 Ill.Dec. 676, 677, 470 N.E.2d 1096, 1097 (1st Dist. 1984) (decision based on standing is not on the merits); *Interstate Bakeries Corp. v. Bakery, Cracker, Pie and Yeast Wagon Drivers Union, Local 734,* 58 Ill.App.2d 485, 208 N.E.2d 397, 399 (1st Dist.1965) (mootness holding was not on the merits). Because the decision was not on the merits, it carries no *res judicata* effect.[13]

### III.

For the reasons stated above, the decision of the district court is REVERSED and the action is *Remanded* for further proceedings consistent with this opinion.

acts). Accordingly, we express no opinion on these issues.

We note that although both this case and *Henry* involve the preclusive effect of an Illinois judgment on a later federal suit, the holding in *Henry* that the prior judgment operated to bar the later suit is not inconsistent with our holding here. *Henry* recognized that "in most instances, a defendant's failure to raise a defense or a counter claim in a prior action will not bar him from raising a related claim in a subsequent proceeding...." Nonetheless, it held that general principle inapplicable because prosecution of the subsequent suit "would nullify the rights established in the prior action." 808 F.2d at 1232, 1235. As we have held, the prior judgment in this case did not establish any right of the board to discharge plaintiffs, it merely established that the arbitrator did not have the power to order reinstatement. Thus, a judgment for plaintiffs in this action would not undermine the prior judgment.

Additionally, the court in *Henry* noted that the allegations of fraud "would have been a complete defense to the foreclosure proceedings." 808 F.2d at 1235. Here, by contrast, the evidence relating to plaintiffs' Title VII claim not only would not have provided a defense to the action to set aside the arbitrator's award, it would have been properly excluded by the Illinois trial court as irrelevant to that action. *See supra* at 1234–36.