LaSALLE NATIONAL BANK OF CHICAGO, as Trustee under Trusts Numbered 40244, 53645, 100385 and 100386, Unity Ventures, and William Alter, Plaintiffs–Appellants,

v.

The COUNTY OF DuPAGE, a body politic, The Board of Commissioners of DuPage County, a body politic, The Village of Lisle, a municipal corporation, and The Village of Woodridge, a municipal corporation, Defendants–Appellees.

No. 87–2497.

United States Court of Appeals, Seventh Circuit.

Argued March 30, 1988.

Decided Sept. 8, 1988.

Rehearing and Rehearing En Banc Denied Oct. 24, 1988.

James P. Chapman, James P. Chapman & Assoc., Ltd., Chicago, Ill., for plaintiffs-appellants.

James H. Ryan, Keck Mahin & Cate, Chicago, Ill., for defendants-appellees.

Before CUDAHY, RIPPLE and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

The plaintiffs are owners and developers of a 145–acre parcel of real estate located in DuPage County, Illinois between the Villages of Lisle and Woodridge. They brought the present action under 42 U.S.C. § 1983, in which they allege that the defendants wrongfully violated their constitutional right to make reasonable use of their property. The plaintiffs claim that the defendants have violated the equal protection, due process, and taking clauses of the fifth and fourteenth amendments. The district court dismissed the plaintiffs' claims under the doctrine of res judicata. We reverse.

## I

### Background

#### A. *Facts*

This lawsuit has been through a long and tortuous litigation history, and its facts are complicated. Fortunately, those facts have been set forth already in an earlier appeal in this court. *See LaSalle Nat'l Bank v. County of DuPage*, 777 F.2d 377 (7th Cir. 1985), *cert. denied*, 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 979 (1986). We borrow heavily from that rendition.

In 1969, the plaintiffs purchased a 145–acre parcel of unincorporated land in DuPage County near Chicago with the intention of developing the area for luxury housing and related commercial businesses. The 145–acre development is known as "Hobson Greene" and lies within a largely unincorporated 1,500–acre tract known as the "Greene Area." The defendant DuPage County (the County), through the defendant Board of Commissioners, governs the unincorporated portions of DuPage County including the area containing Hobson Greene. The other defendants, the Villages of Lisle and Woodridge (Lisle and Woodridge, or, collectively, the Villages), are located within DuPage County on the eastern boundary of the Greene Area.

The plaintiffs allege that the defendants have engaged in a continuing conspiracy over a fifteen-year period to deprive them wrongfully of their right to make reasonable use of their property. Their complaint initially alleged violations of the antitrust laws. In their amended complaint, the operative pleading at this stage of the litigation, they allege that the defendants have violated the equal protection, due process, and taking clauses of the fifth and fourteenth amendments. The plaintiffs allege that the conspiracy involved overt acts in three areas: zoning, water and annexation, and sewage.

*Zoning:* In 1970, the plaintiffs petitioned the DuPage County Zoning Board of Appeals for a special use permit that would have allowed them to proceed with the development of Hobson Greene. After conducting a public hearing, the Zoning Board of Appeals recommended that the Board of Commissioners deny the petition for the special use permit. On December 24, 1974, the Board of Commissioners adopted the recommendation of the Zoning Board of Appeals to deny the petition. The plaintiffs appealed the denial and an Illinois appeals court ultimately reversed the decision of the Board of Commissioners. The

court found that the action of the Board of Commissioners had "little or no relation to the public health, safety and welfare of DuPage County." *LaSalle Nat'l Bank v. County of DuPage,* 54 Ill.App.3d 387, 12 Ill.Dec. 8, 20, 369 N.E.2d 505, 512 (Ill.App. Ct.1977). The plaintiffs allege that "[t]he initial denial of the necessary special use permit and the consequent delay in obtaining the permit were occasioned by the conspiracy among the County, Woodridge, and Lisle." Appellants' Br. at 9.

*Water and Annexation:* In 1978, the Villages entered into an agreement to divide the unincorporated land lying between their borders for purposes of annexation and the provision of water service. The plaintiffs approached Woodridge about providing water service to the Hobson Greene development. Woodridge conditioned the provision of water service on the plaintiffs' acceptance of Woodridge's annexation of the Hobson Greene development. The plaintiffs, not satisfied with the terms of Woodridge's offer, approached Lisle about water service. Since Hobson Greene lies beyond Lisle's exclusive territory, Lisle refused to deal with the plaintiffs. The plaintiffs allege that "[t]he purpose and effect of this division of territory was to give Woodridge the power to extract whatever demands it desired from any developer in its 'territory' who needed water service," and that, "[a]s a result of defendants' refusal to provide water service to Hobson Greene, plaintiffs were forced to rely on well water." Appellants' Br. at 10. Because the plaintiffs had to resort to well water, they were required to split their development into three phases.

*Sewage:* In or about 1971, the County and the Villages decided to consolidate the ownership and management of their various sewage treatment facilities. To this end, the County purchased the sewage treatment facilities of each of the Villages and agreed to provide sewage treatment service to the Villages. Among the provisions in the sales agreements was one reserving for the Villages the right to determine which users outside the Villages would receive sewage treatment service from the sewage treatment plant the Vil-

lages were selling to the County. The agreements also specified that, in the event new sewage treatment connections had to be rationed, the Villages would each have a right of first refusal to a certain number of connections.

The plaintiffs needed sewer permits from the Illinois Environmental Protection Agency (IEPA) and the County to construct sewer lines and to connect them to a sewage treatment plant. The plaintiffs received the necessary connection permits from the IEPA for Phase One and Phase Two of Hobson Greene on February 8, 1979 and January 31, 1979, respectively. Each permit was valid for two years, which meant that the plaintiffs could preserve their rights by laying sewer pipe any time before early 1981.

In 1979, the contingency contemplated in the sales agreements between the County and the Villages occurred when the IEPA determined that the consolidated DuPage County sewage treatment plant was overburdened. The IEPA sought to place a freeze on all further connections to the sewage treatment system until capacity was increased. At this point, another developer in the County, Corporate West, brought suit in the Circuit Court of DuPage County against the IEPA, the County, Lisle, and Woodridge. In this suit, Corporate West sought a declaration that it could connect its development to the Lisle–Woodridge plant regardless of the IEPA's action placing the plant on restricted status. The IEPA then filed a cross-claim against the County, Lisle, and Woodridge in which it sought to enjoin them from issuing further building or connection permits. Corporate West ultimately was allowed to connect its development to the plant and was dismissed from the suit.

The IEPA then negotiated a settlement of its cross-claim with the other defendants under which it agreed to allow a limited number of new connections if the County would take certain steps to upgrade its treatment facility. The County and Villages agreed on a formula for dividing additional connections according to the following percentages: thirty-eight percent to

Lisle, thirty-four percent to Woodridge, and twenty-eight percent to unincorporated portions of DuPage County. The agreement was subsequently embodied in a state circuit court decree, *Corporate West Development, Inc. v. Illinois Environmental Protection Agency*, No. 79 MR 257 (Cir.Ct. DuPage County Aug. 13, 1980) (*Corporate West*). The plaintiffs were not given notice or an opportunity to be heard prior to entry of the *Corporate West* decree even though they had preexisting valid permits from the IEPA. The twenty-eight percent allotted to the County for unincorporated areas was not sufficient to meet the needs of the Hobson Greene development. Consequently, the plaintiffs sought and were granted leave to intervene in the *Corporate West* suit. Their original intervention petition sought only injunctive relief and ultimately was mooted by the construction of a new sewage treatment plant with sufficient capacity to treat all the sewage generated by Hobson Greene. The state trial court's dismissal of that original petition, however, was without prejudice, and the plaintiffs subsequently filed an amended intervenor complaint asserting a section 1983 claim for damages arising out of the sewage controversy. The state court dismissed the amended intervenor complaint because it determined that the plaintiffs had not been injured by any of the defendants' actions. At issue in this case is whether the state court's judgment dismissing the plaintiffs' amended intervenor complaint in the *Corporate West* suit bars the present suit under the doctrine of res judicata.

B. *Procedural History*

1. The Illinois state court action

The *Corporate West* case was filed on May 31, 1979 in the circuit court in DuPage County. The plaintiffs moved to intervene on October 10, 1980 and fully participated thereafter. The purpose of the plaintiffs' intervention was to challenge the court's August 13, 1980 order, which allocated additional sewer capacity among the defendants, as a violation of the plaintiffs' rights to their IEPA sewer permits. The factual basis for the *Corporate West* complaint was limited to the defendants' alleged denial of sewage hookups and the events surrounding the entry of the *Corporate West* decree. Events concerning zoning and water and annexation were not at issue in that suit.

The plaintiffs' original intervenor complaint was dismissed as moot on May 13, 1984 with leave to amend. On June 11, 1984, the plaintiffs filed an amended intervenor complaint that sought damages for alleged violations of the due process, equal protection, and taking clauses of the fifth and fourteenth amendments. The defendants filed several motions to dismiss the amended intervenor complaint. The state trial court granted the defendants' third motion to dismiss. In an opinion by Judge Peccarelli, issued on December 16, 1986, the trial court found that:

5. [The plaintiffs were] never prohibited from exercising [their] rights, under the 1979 permit, to construct and connect [their] sewer line to the Lisle and Woodridge Plant by the August 13, 1980 Order of this Court or otherwise. During the existence of the permit, [the plaintiffs] never obtained a judicial or administrative judgment as to the status of the 1979 permit, nor constructed and attempted to connect [their] sanitary system to the Lisle and Woodridge Plant.

6. [The plaintiffs were] never injured in fact in [their] rights under the 1979 permit because [they were] never actually refused the right to connect. In fact, during the existence of the permit, the structural work necessary to connect with the Lisle and Woodridge Plant, and permitted by [their] permit, had not even been started by [the plaintiffs].

7. [The plaintiffs'] 1979 permit expired on its own terms on January 31, 1981, extinguishing [their] rights thereunder.

8. For the foregoing reasons, [the plaintiffs were] never injured in fact; no justiciable issue is presented herein; [the plaintiffs have] no standing to bring this action.

*Corporate West Dev., Inc. v. Illinois Envtl. Protection Agency*, No. 79 MR 257 (Cir.Ct. DuPage County Dec. 16, 1986); Appellees' Supp.App. at 277–78.

On December 11, 1987, the Appellate Court of Illinois affirmed the circuit court's dismissal of the amended intervenor complaint. *See Corporate West Dev., Inc. v. Illinois Envtl. Protection Agency*, No. 79 MR 257 (Ill.App.Ct. Dec. 11, 1987); Appellees' Br. at Ex. A. The court found that the plaintiffs did not have standing because they had failed to show that they had sustained, or were immediately in danger of sustaining, some direct injury as a result of the challenged conduct.[1] The court reasoned that (1) the plaintiffs had no intention of constructing the on-site interceptors prior to the expiration of their IEPA permits; and (2) even if the plaintiffs had been able to construct the on-site interceptors within the time remaining on their IEPA permits, they had no intention of seeking the connection permits that they claimed they were denied. Moreover, the court found that the plaintiffs never sought, and therefore were never refused, the building and connection permits that they alleged they were denied. *Id.* at 15–16.

### 2. The present suit

The plaintiffs filed the initial complaint in this suit on October 26, 1982, in which they alleged violations of the antitrust laws. The district court denied the defendants' motion to dismiss, but, on interlocutory appeal, this court dismissed the antitrust complaint under the state action exemption of *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), and its progeny. *See LaSalle Nat'l Bank v. County of DuPage*, 777 F.2d 377 (7th Cir.1985). The Supreme Court denied certiorari. 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 979 (1986). On remand, the plaintiffs sought leave to amend their complaint. The district court denied this motion. The plaintiffs appealed and, on September 19, 1986, this court remanded the case to the district court with directions to consider the plaintiffs' motion to file an amended complaint. R. 101 at

Ex. C. On April 1, 1987, the district court granted the plaintiffs' motion to file an amended complaint under section 1983 alleging constitutional violations. On July 31, 1987, however, the district court dismissed the plaintiffs' amended complaint under the doctrine of res judicata. The plaintiffs filed a timely notice of appeal.

### C. Opinion of the District Court

The district court held that the present suit was barred by the doctrine of res judicata. Applying Illinois law, the court explained that a final judgment on the merits rendered by a court of competent jurisdiction bars the same parties or their privies from relitigating issues that were raised or could have been raised in the prior action. *LaSalle Nat'l Bank v. County of DuPage*, No. 82 C 6517, mem. op. (N.D.Ill. July 31, 1987) [available on WESTLAW, 1987 WL 15392]; R. 128. The district court accepted arguendo the plaintiffs' contention that the present lawsuit is different from the *Corporate West* action or any other state proceeding involving the same parties. Nevertheless, the court held that res judicata bars not only claims that were presented previously, but also claims that should have been presented in an earlier action but were not. The court concluded that the plaintiffs have had multiple opportunities to allege the whole conspiracy claimed in this suit, the most recent opportunity being in their amended intervenor complaint in the *Corporate West* proceeding. The court stated:

> Plaintiffs were aware of a potential section 1983 claim because they alleged such a claim in the amended intervenor complaint. In that complaint, Plaintiffs had to raise every ground for obtaining damages based on civil rights violations, else be open to a charge of splitting their cause of action.

*Id.* at 10.

The district court also held that the state court judgment was a final judgment on the merits, contrary to the plaintiffs' assertion that the state court merely decided

---

1. *See infra* note 4.

that the plaintiffs lacked standing in that suit. As the district court explained:

> Here, it is clear that Judge Peccarelli's dismissal was "on the merits." He stated that Plaintiffs suffered no injury in fact; and any real injury was self-inflicted. He did use the word "standing," but not in the context urged by Plaintiffs. Judge Peccarelli correctly ruled that only an injured party may bring suit. He held that Plaintiffs had not been injured by Defendants; he did not hold that someone *had* been injured but that this Plaintiff technically was the wrong party to sue.

*Id.* at 11–12 (emphasis in original).

In sum, the district court held that the failure to raise a conspiracy claim at any time during the litigation in the Illinois courts, despite repeated opportunities to do so, bars the present action.

## II

### Analysis

A. *Res Judicata—Fundamental Principles*

We must decide whether, under the doctrine of res judicata,[2] this federal action, based on 42 U.S.C. § 1983, is barred by the previous action in the state court, also premised, at least in part,[3] on 42 U.S.C. § 1983. The basic principles governing our inquiry have been set forth recently by Judge Cudahy in *Torres v. Rebarchak*, 814 F.2d 1219, 1222 (7th Cir.1987), and therefore can be restated quite briefly here. Section 1738 of title 28 commands that a federal court give the judgments of a state court "the same full faith and credit ... as they have by law or usage in the courts of such State...." 28 U.S.C. § 1738; *see Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 1331–32, 84 L.Ed.2d 274 (1985);

*Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 481–82, 102 S.Ct. 1883, 1897–98, 72 L.Ed.2d 262 (1982); *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415–16, 66 L.Ed.2d 308 (1980). Consequently, a "state judgment must be given the same *res judicata* effect in federal court that it would be given in the court of the rendering state." *Torres*, 814 F.2d at 1222.

Whether the plaintiffs' claims in this action are barred, therefore, turns upon the preclusive effect of the earlier state judgment under the law of Illinois. This court has had several occasions during its recent terms to refer to the Illinois law of res judicata. *See, e.g., Wozniak v. County of DuPage*, 845 F.2d 677 (7th Cir.1988); *Torres*, 814 F.2d at 1222; *Kirk v. Board of Educ.*, 811 F.2d 347 (7th Cir.1987); *Frier v. City of Vandalia*, 770 F.2d 699 (7th Cir. 1985); *Hagee v. City of Evanston*, 729 F.2d 510 (7th Cir.1984). A reading of these cases makes it quite evident that we have not found it easy to extract from the oftentimes conflicting language in the opinions of the Illinois Appellate Court sufficient guidance to permit us to fulfill our obligation under section 1738. In *Torres*, however, we set forth those threshold principles that are settled. 814 F.2d at 1222. We now set them forth again in order to identify the area where ambiguity still exists:

1) Under Illinois law of res judicata, a final judgment on the merits rendered by a court of competent jurisdiction bars the same parties or privies from relitigating matters that were raised or could have been raised in the prior action. *Id.; see also Wozniak*, 845 F.2d at 680.

---

**2.** The term res judicata in this opinion is used to refer to claim preclusion, "i.e., the preclusive effect of a judgment in foreclosing litigation of matters that were or could have been raised in an earlier suit." *Kirk v. Board of Educ.*, 811 F.2d 347, 351 n. 7 (7th Cir.1987). This concept is to be distinguished from collateral estoppel, or issue preclusion, "which refers to the effect of a judgment in foreclosing relitigation in a

subsequent action of an issue of law or fact that has been actually litigated and decided in the initial action." *Id.*

**3.** The plaintiffs' complaint in state court also stated claims based upon the Constitution of Illinois.

2) As a general proposition (we shall treat this point with more precision later in the opinion) a final judgment on the merits not only settles issues that actually were litigated in the prior action but also issues that might have been raised in the prior action. *Torres*, 814 F.2d at 1222.

3) The party asserting the defense of res judicata has the burden of showing with clarity and certainty what was determined by the prior judgment. Any doubt as to what was decided in the earlier action must be resolved against an application of res judicata. *Id.*

4) The essential elements of res judicata are (1) an identity of parties or their privies; (2) an identity of causes of action in the earlier and in the later suit; and (3) a final judgment on the merits in the earlier suit. *Id.*

Most of the ambiguity surrounding the Illinois law of res judicata involves the second of these elements—the identity of causes of action. That element is also at the center of the controversy between the parties in this case.[4] We now turn to an examination of that question.

### B. *The Same Cause of Action Under Illinois Law*

In his exhaustive and scholarly treatment of this issue for the court in *Hagee*, Judge Flaum summarized the state of Illinois law as follows:

The Illinois intermediate appellate courts have produced a wealth of cases on the question of what constitutes a cause of action, but they have not spoken with one voice. Our review of Illinois case law reveals many different formulations of the test to determine whether two suits involve the same cause of action, with no clear trend in any direction. However, despite differences in language, virtually all of these cases can be placed in one of two basic groups.

In the first group of cases, the courts have approached the task of deciding whether two suits involve the same cause of action by looking at the proof required in each suit. This "proof" approach has been stated in numerous ways. For example, one oft-cited standard is whether the same evidence would sustain both actions.

In the other group of Illinois cases dealing with the res judicata doctrine, the courts have taken a "transactional" approach to identifying a cause of action. A court employing a transactional approach will focus not on the type of proof required in each suit, but on the factual setting in which each suit arises. If both suits arise from the same transaction, incident or factual situation, res judicata generally will bar the second suit. In *Baird & Warner, Inc. v. Addison Industrial Park, Inc.*, 70 Ill.App.3d 59, 64, 26 Ill.Dec. 1, 8, 387 N.E.2d 831, 838 (1979), the court explained the transactional approach. It stated, "The mere fact that different claims are alleged is immaterial; the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief."

729 F.2d at 512–13 (footnotes and citations omitted).[5] Since the Illinois Supreme Court

---

**4.** The plaintiffs have also argued that the state trial court's dismissal of their amended intervenor complaint in the *Corporate West* suit did not constitute a judgment on the merits because the court based its dismissal on the plaintiffs' lack of standing. Because we hold that the state court suit and the present suit are not based on the "same cause of action," and therefore that the doctrine of res judicata does not apply to bar the present suit, we need not address the plaintiffs' argument with respect to whether the state court dismissal was "on the merits."

**5.** Judge Flaum admitted that these two general categorizations were subject to significant varia-

tions. With respect to the "proof" approach, he wrote:

Other Illinois courts have held the test to be whether the evidence needed to sustain the second action would have sustained the first. *See, e.g., Schmitt v. Woods*, 73 Ill.App.3d 498, 500, 29 Ill.Dec. 498, 499, 392 N.E.2d 55, 56 (1979); *Pierog v. H.F. Karl Contractors, Inc.*, 39 Ill.App.3d 1057, 1061, 351 N.E.2d 249, 252 (1976). One court has framed the cause of action question as whether "every fact necessary for the [first] action is necessary to the cause at bar." *Cranwill v. Donahue*, 99 Ill. App.3d 968, 971, 55 Ill.Dec. 362, 364, 426 N.E.2d 337, 339 (1981). Most of the remain-

had not expressed explicitly a preference for either of these approaches, Judge Flaum turned to that court's "most recent pronouncements ... with regard to the policies behind the res judicata doctrine and the scope of that doctrine...." *Id.* at 513.[6] The Illinois court had identified, he found, several policies that were fostered by the doctrine of res judicata:

> The res judicata doctrine has developed because of "the practical necessity that there be an end to litigation and that controversies once decided on the merits shall remain in repose." *Hughey v. Industrial Commission,* 76 Ill.2d 577, 582, 31 Ill.Dec. 787, 789, 394 N.E.2d 1164, 1166 (1979). Stated differently, res judicata is designed "to enhance judicial economy by prohibiting repetitive litigation." *Spiller v. Continental Tube,* 95 Ill.2d 423, 432, 69 Ill.Dec. 399, 403, 447 N.E.2d 834, 838 (1983) (citations omitted). The res judicata doctrine is also designed to protect litigants from the burden of repetitive litigation. *Id.* On the basis of these policy considerations, the Illinois Supreme Court has summarized the scope of the res judicata doctrine as follows:
>
>> [T]he conclusiveness of the judgment in such case [the prior action] extends not only to matters actually determined, but also to other matters which could properly have been raised and determined therein. This rule applies to *every question relevant to and falling within the purview of the original action,* in respect to matters of both claim or grounds of recovery, and defense, which could have been presented by the exercise of due diligence.
>>
>> *Hughey v. Industrial Commission,* 76 Ill.2d at 582, 31 Ill.Dec. at 789, 394 N.E. 2d at 1166 (citations omitted).

*Id.* at 514 (emphasis supplied).

The *Hagee* court concluded that:

> The principle that res judicata extends to *all matters within the purview of the original action,* whether or not they were actually raised, is tantamount to a rule requiring parties to consolidate all closely related matters into one suit. As such, the principle serves well the interest of judicial economy, and thus it is at the core of the res judicata doctrine.

*Id.* (footnotes omitted; emphasis supplied). The *Hagee* panel did not define the term "closely related matters." However, its extraction of two "corollaries" from the foregoing principle gives some guidance to this otherwise amorphous concept:

> Two corollaries of that principle are also of fundamental importance to Illinois's res judicata doctrine. First is the rule that a party may not maintain two suits based on the same set of facts by the simple expediency of limiting the theories of recovery advanced in the first. The second rule is that a party may not main-

---

ing cases in this group state not one test for determining what is a cause of action, but two. *See, e.g., Village of Northbrook v. County of Cook,* 88 Ill.App.3d 745, 750, 43 Ill.Dec. 792, 796, 410 N.E.2d 925, 929 (1980) (test is "whether the evidence needed to sustain the second would have sustained the first or whether there is identity of facts essential to the maintenance of both cases"); *Palya v. Palya,* 87 Ill.App.3d 472, 475, 42 Ill.Dec. 638, 641, 409 N.E.2d 133, 136 (1980) (test is "whether there is identity of facts essential to the maintenance of both cases or whether the same evidence would sustain both actions"). *Hagee,* 729 F.2d at 513 n. 4. With respect to the "transactional" approach, he wrote:

Other Illinois courts have also adopted a transactional approach in determining whether two suits involve the same cause of action, looking at the "operative facts" or "underlying facts" of each suit. *See Radosta v. Chrysler Corp.,* 110 Ill.App.3d 1066, 1069, 66 Ill.Dec.

744, 747, 443 N.E.2d 670, 673 (1982); *Wilson-Jump Co. v. McCarthy–Hundrieser and Associates, Inc.,* 85 Ill.App.3d 179, 184, 40 Ill.Dec. 230, 234, 405 N.E.2d 1322, 1326 (1980); *Power Electric Contractors, Inc. v. Maywood–Proviso State Bank,* 60 Ill.App.3d 685, 691, 17 Ill.Dec. 952, 956, 377 N.E.2d 142, 146 (1978). *See also Morris v. Union Oil Co.,* 96 Ill.App.3d 148, 157, 51 Ill.Dec. 770, 777, 421 N.E.2d 278, 285 (1981) (implicitly applying an "underlying facts" test); *Bass v. Scott,* 79 Ill.App.3d 224, 226, 34 Ill.Dec. 561, 563, 398 N.E.2d 236, 238 (1979) (test is "whether the underlying facts are identical in both actions or whether the same evidence would sustain both actions"). *Id.* at 513 n. 6.

6. The panel in *Frier v. City of Vandalia,* 770 F.2d 699, 702–03 (7th Cir.1985), also relied upon the underlying policies of res judicata.

tain two suits based on the same set of facts simply by altering the claim for relief from one suit to the next.

*Id.* (citations omitted). It is important to note that both these corollaries rely on the premise that the two suits in question were based on the "same set of facts." This emphasis on the factual basis for the two suits did not escape the attention of a later panel in *Kirk*, which suggested that the factual similarities of the two suits was perhaps the harmonizing principle in the Illinois cases. "[T]here is language in Illinois cases which suggests that the 'same evidence' and 'same core of operative facts' tests are the same." *Kirk*, 811 F.2d at 352 n. 8. Consequently, concluded the court, "we are less concerned with the label that the Illinois courts put on their analysis than with the way in which they apply the doctrine." *Id.* "Illinois cases applying (or, more importantly, declining to apply) *res judicata* are instructive more for their holdings than for the tests which they purport to apply." *Id.* at 352.

### C. *The Present Case*

The collective wisdom of our brethren on cases requiring the court to unravel the mysteries of Illinois res judicata doctrine suggests that we focus our analysis on a comparison of the factual undergirding of the two cases at issue. From this perspective, it is clear that the two cases are quite dissimilar.

The instant action alleges a nine-year conspiracy by the defendants to deprive the plaintiffs of the fair use of their land. According to the plaintiffs, this conspiracy was effected by denying the plaintiffs zoning permits in 1971, water access in 1978, and sewage hookups in 1979. By contrast, the plaintiffs' earlier action was as an intervenor in an ongoing sewer dispute between other parties. Although the plaintiffs did file an amended intervenor complaint alleging that the defendants had, by means of the sewer disputes, endeavored to deprive them wrongfully of fair use of their land, that complaint was significantly narrower and different than the present suit. It dealt with sewage hookups alone

and did not allege that the defendants had engaged in a multifaceted conspiracy.

Under the "proof" approach, *Hagee*, 729 F.2d at 512, these two causes of action are not the same. The proof that the plaintiffs would have to offer in this case in order to prevail is significantly different from the proof that was involved in the earlier state action. In the earlier suit, the evidence related to only a single event over a brief time span. By contrast, the present action involves multiple events over a much longer time span. Moreover, the plaintiffs could prove their cause of action in the instant case without relying on any facts at issue in the earlier action. *See Cranwill v. Donahue*, 99 Ill.App.3d 968, 55 Ill.Dec. 362, 364, 426 N.E.2d 337, 339 (1981) (causes of action are the same if "every fact necessary for the [first] action is necessary to the cause at bar"). Thus, under the evidence test, these are two different causes of action.

Under the "transactional" approach the same result obtains. The two suits do not arise "from the same transaction, incident or factual situation...." *Hagee*, 729 F.2d at 513. While the two suits do have one transaction in common, the present suit is much broader in its scope and involves allegations arising out of several transactions that were not at all in issue in the earlier suit. Notably, this case falls within neither of the two corollaries established by the *Hagee* court to foster "a rule requiring parties to consolidate all closely related matters into one suit." *Id.* at 514 (footnote omitted). The plaintiffs have not attempted to "maintain two suits based on the same set of facts by the simple expediency of limiting the theories of recovery advanced in the first." *Id.* Nor have they tried to "maintain two suits based on the same set of facts simply by altering the claim for relief from one suit to the next." *Id.* Here, the present suit is based on a very different factual scenario and on a very different theory of recovery.

Nevertheless, it is argued that, because the plaintiffs were aware of the factual basis for the present suit at the time they amended their complaint in the state action to include constitutional claims, they were obliged to bring their conspiracy complaint

at that time. However, the defendants, who have the burden of establishing the proposition, *see Torres*, 814 F.2d at 1222, have not been able to demonstrate that the Illinois courts would consider these two factual scenarios so "closely related," *Hagee*, 729 F.2d at 514, that they would consider a suit based on one precluded if it were not brought in the same lawsuit as the other. *See Benton v. Smith*, 157 Ill. App.3d 847, 109 Ill.Dec. 884, 889, 510 N.E. 2d 952, 957 (1987) (mere overlapping of facts in two cases, but not the key or operative facts, does not determine the res judicata issue). Indeed, there is authority in Illinois to the contrary. *See Fountas v. Breed*, 118 Ill.App.3d 669, 455 N.E.2d 200, 202, 455 N.E.2d 200, 204 (1983) (even when permissive joinder is possible, failure to bring both causes of action in the same lawsuit does not bar second action).

Accordingly, we conclude that the present action is not barred by the Illinois court's previous disposition of the plaintiffs' constitutional allegations with respect to sewer hookups. Under Illinois law, the current action does not involve the same cause of action as the previous state court suit.

D. *Conclusion*

We caution that our holding today that the present action is not barred by the doctrine of res judicata does not preclude the defendants from arguing to the district court that the Illinois judgment precludes, under the doctrine of collateral estoppel, further litigation of certain issues in this action. We also note that the defendants submitted to the district court that this action ought to be dismissed on the ground of abstention. In determining that the defendants' res judicata argument was meritorious, the district court specifically noted that it need not reach the abstention issue. On remand, the district court is, of course, free to address this issue.

The judgment of the district court is reversed.

REVERSED.