Ralph BARNETT, Philip Liss, and Louis Levit, Trustee of the Bankrupt Estate of Burton L. Stern, Plaintiffs–Appellants,

v.

Burton L. STERN, Individually and as Trustee of the Burton L. Stern Trust dated August 1, 1978, and Todd Stern, Individually and as Trustee of the Nationwide Trust dated March, 1985, Defendants–Appellees.

No. 88–3512.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 28, 1989.
Decided Aug. 2, 1990.

Louis W. Levit, Sharon Riley, Chicago, Robert Frankenstein, Kozlicki, Widman & Goldberg, Chicago, Ill., for plaintiff-appellant.

Allan E. Levin, Patrick A. Barton, Donald L. Johnson, Chicago, Ill., for defendants-appellees.

Before WOOD, Jr., RIPPLE, and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

Louis Levit, trustee of the bankruptcy estate of Burton L. Stern, appeals the judgment of the district court that his claim against Todd Stern is barred by res judicata. For the following reasons, we reverse the judgment of the district court against Levit and remand the case for further pro-

ceedings on his claim. We also hold that we lack jurisdiction over the appeals of Ralph Barnett and Philip Liss.

## I

## BACKGROUND

### A. *Factual History*

Ralph Barnett and Philip Liss are creditors of Burton L. Stern (Burton). In 1965, Barnett sued Burton for $44,800 in Illinois state court. In 1966, Liss sued Burton for $15,000 in state court. In 1968, while Barnett and Liss' suits were still pending, Burton filed for bankruptcy. At the conclusion of these bankruptcy proceedings, Barnett and Liss filed objections to the discharge of their debts. These objections were sustained by the bankruptcy court and affirmed on appeal.

In 1978, Burton created the Burton L. Stern Trust (the B.L.S. Trust), which named Burton as trustee and his children as beneficiaries. Burton transferred nearly all of his assets into the trust in order to avoid the claims of his creditors and his wife, who sought to divorce him. Although Burton succeeded for a number of years in keeping the B.L.S. Trust funds out of the reach of creditors, he did not operate the trust for the benefit of his children. Instead, Burton used the money to satisfy his own personal loan obligations, living expenses, and recreational costs.

In January 1983, Barnett and Liss finally won judgments totalling approximately $100,000 in their state court suits against Burton. When they attempted to collect on their judgments, however, Burton claimed that he lacked the funds to pay them.[1] By 1985, however, a law firm that had done work for Burton obtained a state court judgment against him. Because one of the lawyers in the firm had assisted Burton in setting up the B.L.S. Trust, the firm knew that Burton's pleas of poverty were misrepresentations. In April 1985, on the firm's motion, the state court declared the B.L.S.

---

1. Burton also testified to this effect during a citation to discover assets in December 1983.

*See Barnett v. Stern*, 93 B.R. 962, 965 (N.D.Ill. 1988).

Trust a sham and ordered Burton to pay the firm with assets from the trust.

After Barnett and Liss found out about the B.L.S. Trust, they filed a lawsuit against Burton in federal district court. The suit alleged a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68, based on Burton's alleged misrepresentations regarding his financial condition and his concealment of assets. Barnett and Liss sought treble damages for the alleged violation, and they also sought a preliminary injunction to preclude further depletion of B.L.S. Trust funds. On September 26, 1985, the district court adopted the magistrate's conclusions that the B.L.S. Trust was a sham, that Burton was continuing to deplete its assets, and that Barnett and Liss had demonstrated a reasonable likelihood of success on the merits. The district court thus granted the preliminary injunction.

During the pendency of these federal proceedings (in addition to other state proceedings), Burton again attempted to outmaneuver his creditors by setting up another trust. In March 1985, Burton's son Todd Stern (Todd) created the Nationwide Trust (N.W. Trust), which named Todd as trustee and Burton's other children as beneficiaries. Most of the remaining funds in the B.L.S. Trust eventually were transferred into the N.W. Trust. Although Todd was named as trustee of the N.W. Trust, Burton controlled the trust and used it for his own benefit. Todd even authorized a signature facsimile stamp for Burton's convenience in dealing with the trust funds.

On August 23, 1985, after most of the B.L.S. Trust funds had been transferred into the N.W. Trust, Burton filed another bankruptcy petition in federal bankruptcy court. Although Burton eventually amended his list of assets to include the B.L.S. Trust, he did not reveal the existence of the N.W. Trust. During the eighteen months following this second bankruptcy filing, Burton spent over $102,000 of N.W. Trust funds.

In May 1986, the bankruptcy court appointed Louis Levit as the Chapter 7 Trustee of Burton's bankruptcy estate. Levit then initiated an adversary proceeding in the bankruptcy court against the N.W. Trust. Levit alleged that the N.W. Trust was merely the alter ego of Burton and sought to have the bankruptcy court declare all of the trust assets property of the bankruptcy estate. On December 16, 1986, after receiving evidence and hearing argument on the matter, the bankruptcy court entered judgment for Levit and ordered Levit as trustee to assume control of all N.W. Trust assets.

Upon the filing of Burton's second bankruptcy petition in August 1985, Barnett and Liss' claims became subject to the automatic stay provided in 11 U.S.C. § 362(a). Thus, while Levit was pursuing his adversary proceeding, Barnett and Liss as creditors were required to seek relief from the automatic stay before proceeding with their federal suit. The bankruptcy court granted Barnett and Liss relief from the stay on June 24, 1986. The court authorized Barnett and Liss to proceed with their federal suit alleging RICO and fraud, but specified that they were to proceed with the case " 'only for the purpose of establishing the amount of their claim against Burton L. Stern,' " and that " '[a]ny recovery arising out of the RICO/fraud case shall be the property of the estate to the extent said recovery is collected from assets and proceeds of assets which may be claimed as property of the estate.' " *Barnett v. Stern*, 93 B.R. 962, 966 (N.D.Ill. 1988) (quoting *In re Burton L. Stern, Debtor*, 85 B 10870 (June 24, 1986)). Several months later, the bankruptcy court authorized Levit to join as a plaintiff in Barnett and Liss' suit in order to protect the estate's interest.

The plaintiffs' complaint, as finally amended, consisted of five counts. Counts I through IV were brought by Barnett and Liss, and Count V was brought by Levit.[2] Count I alleged that Burton had violated RICO through his scheme to use the B.L.S.

---

**2.** All counts against Burton and Todd except Count V were brought against each defendant both individually and as trustee of the B.L.S. Trust and N.W. Trust, respectively.

Trust to conceal assets from his creditors. Count II alleged that these same facts constituted common law fraud under Illinois law. Count III, which named both Burton and Todd as defendants, alleged RICO violations based on the operation of the N.W. Trust. Count IV realleged the facts in Count III and contended that these acts constituted common law fraud under Illinois law. Count V, which Levit alone pressed against Todd in his individual capacity,[3] alleged a violation of RICO based on the use of the N.W. Trust to conceal assets and the depletion of N.W. Trust funds following Burton's August 1985 bankruptcy filing. The case proceeded as a bench trial before the district court in September 1987.

### B. *District Court Opinion*

In a lengthy memorandum opinion, the district court rendered its judgment in the case. *Barnett v. Stern*, 93 B.R. 962 (N.D. Ill.1988). Before reaching the merits of the case, the district court disposed of several threshold issues. First, it concluded that Levit, as trustee of the bankruptcy estate, rather than Barnett and Liss, as individual creditors, had standing to bring the RICO and fraud claims under Counts I through IV, but it held that these claims would not be dismissed because the bankruptcy court effectively had designated Barnett and Liss as representatives of the estate for purposes of these claims. Thus, any recovery obtained by Barnett and Liss on these claims would belong to the bankruptcy estate.

Second, the district court addressed Todd's contention that Levit's RICO claim against him (Count V) was barred by res judicata as a result of the previous bankruptcy adversary proceeding in which Levit sought to have the N.W. Trust funds declared property of the estate. Noting that federal rules of res judicata applied, the district court stated the three prerequisites to the application of res judicata: " '(1) an identity of the parties or their privies; (2)

an identity of the causes of action; [and] (3) a final judgment on the merits.' " 93 B.R. at 973 (quoting *Matter of Energy Coop., Inc.*, 814 F.2d 1226, 1230 (7th Cir.), *cert. denied*, 484 U.S. 928, 108 S.Ct. 294, 98 L.Ed.2d 254 (1987)). The court concluded that all three requirements had been met. First, it found that Todd, although not named as a defendant in the adversary proceeding, had been given an opportunity to litigate in that proceeding in both his individual and representative capacity. The court also noted that Levit, by arguing that the bankruptcy court's findings in the adversary proceeding should be given collateral estoppel effect against Todd, effectively had waived any argument that Todd was not a party to the adversary proceeding. Second, the court concluded that both claims arose out of the same fraudulent transaction. Third, the court noted that Levit did not dispute that the bankruptcy court's ruling on the adversary proceeding was a final judgment on the merits. *Id.*

The court then turned to the merits of Counts I through IV. With regard to the RICO claims (Counts I and III), the court concluded that, even though the facts established "paradigmatic violation[s]" of 18 U.S.C. § 1962(c), *id.* at 974, Barnett and Liss were precluded from recovering on these claims because they had not yet proved any damages resulting from these violations. According to the court, because Barnett and Liss had failed to execute their judgments and acquire judicial liens on Burton's property, they still were general unsecured creditors who would not "suffer cognizable damages by fraudulent concealment of specific property until [they] obtain[ ] both a judgment against the debtor and a judicial lien against the property." *Id.* at 976. Moreover, the court explained, although even general unsecured creditors may have a remedy if they can prove that the debtor has become unable to satisfy the debt or their right to recover has become irrevocably lost, the plaintiffs had failed to

---

**3.** Although Count V of the amended complaint named both Burton and Todd individually and Todd in his capacity as trustee of the N.W. Trust, *see* R.88, in the district court Levit pur-

sued only the claim against Todd in his individual capacity. Levit also acknowledges on appeal that he is pursuing only the individual claim against Todd. Appellant's Br. at 10 n. 3.

allege or prove such an injury. *Id.* at 977. Thus, the district court concluded that the defendants were entitled to judgment on the RICO claims.

The court reached a similar result on the common law fraud claims (Counts II and IV). Because one of the elements of fraud is proof that reliance on misrepresentations resulted in injury, *see id.*, the plaintiffs' failure to prove a cognizable injury also was fatal to the fraud claims. The court noted that the plaintiffs had yet to make any effort to satisfy their judgments in the bankruptcy proceedings, and had failed to demonstrate that they were unable to satisfy these claims. Thus, the court entered judgment in favor of the defendants on the fraud claims.

## II

## ANALYSIS

### A. *Present Appeal*

■ Because Barnett and Liss were not named as appellants in the notice of appeal, this court lacks jurisdiction over their appeals. *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988). This circuit has acknowledged that the mandate of *Torres* is to be applied strictly. *See Baucher v. Eastern Ind. Prod. Credit Ass'n*, 906 F.2d 332, 335 (7th Cir.1990) (in *Torres* the Supreme Court "noted that the requirements of rule 3(c) are jurisdictional in nature"); *Allen Archery, Inc. v. Precision Shooting Equip., Inc.*, 857 F.2d 1176, 1177 (7th Cir.1988) ("*Torres* ... requires us to insist on punc-

tilious, literal, and exact compliance with the requirement in Rule 3(c)."); *Rogers v. National Union Fire Ins. Co.*, 864 F.2d 557, 559 (7th Cir.1988) ("Rule 3(c)'s naming requirement is jurisdictional and inflexible.").

■ Although the caption of the notice of appeal in this case reads "RALPH BARNETT, et al.," the body of the notice states only that "Louis W. Levit, Trustee of the Estate ..., *one of the Plaintiffs herein,* hereby appeals...." R.136 (emphasis supplied). This court has held that it has no jurisdiction over appellants who are not named in the body of the notice of appeal, even if they are named in the caption. *Bigby v. City of Chicago*, 871 F.2d 54, 57 (7th Cir.1989); *Allen Archery*, 857 F.2d at 1176–77. In this case, there can be no argument that anyone other than Levit was designated by the notice, because the notice clearly states that Levit alone is appealing. Thus, even if the caption ordinarily would be construed as a designation of an appellant, any such intended designation in this case clearly was negated by the express language of the notice itself.[4] Therefore, the only appeal properly before us is Levit's contention that the district court erred in holding that his RICO claim was barred by res judicata.

### B. *Res Judicata—Count V*

#### 1.

■ The district court correctly concluded that, because the prior action was brought in federal court, federal rules of res judicata apply.[5] *See Matter of Energy*

---

**4.** Even if we determined that we had jurisdiction over Barnett and Liss' claims, we would agree with the district court's assessment that Barnett and Liss' damages claims are speculative (and premature). *See Barnett*, 93 B.R. at 977; *see also Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1106 (2d Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989). The district court clearly determined that Barnett and Liss had established the other elements of a RICO violation, but it also determined that Barnett and Liss had yet to show damages because it remains to be seen whether they will be able to satisfy their claims from the bankruptcy estate. Although the district court granted judgment for the defendants on these claims rather than dismissing the claims with-

out prejudice, we express no opinion on whether, if Barnett and Liss ultimately are damaged by an inability to satisfy their claims from the bankruptcy estate, they would be barred by res judicata from initiating a new suit alleging actual damages based on their inability to recover their claims in bankruptcy.

**5.** As used in this opinion, the term "res judicata" is synonymous with the concept of "claim preclusion," which refers to " 'the preclusive effect of a judgment in foreclosing litigation of matters that were or could have been litigated in an earlier suit.' " *LaSalle Nat'l Bank of Chicago v. County of DuPage*, 856 F.2d 925, 930 n. 2 (7th Cir.1988) (quoting *Kirk v. Board of Educ.*, 811 F.2d 347, 351 n. 7 (7th Cir.1987)), *cert. denied,*

*Coop., Inc.*, 814 F.2d 1226, 1230 (7th Cir.), *cert. denied*, 484 U.S. 928, 108 S.Ct. 294, 98 L.Ed.2d 254 (1987). As the district court also correctly noted, three elements are prerequisite to the application of res judicata: "(1) an identity of the parties or their privies; (2) an identity of the causes of action; and (3) a final judgment on the merits." *Conner v. Reinhard*, 847 F.2d 384, 394 (7th Cir.), *cert. denied*, 488 U.S. 856, 109 S.Ct. 147, 102 L.Ed.2d 118 (1988).

■ Although on appeal Levit strenuously contests the conclusion of the district court on the identity of parties element, we agree with the district court that Levit, by continually arguing before the district court that Todd (in his individual capacity) *was* a party to the adversary proceeding, has waived any right to argue that Todd was not a party to the adversary proceeding.[6] *Barnett*, 93 B.R. at 973; *see, e.g., Gray v. Lacke*, 885 F.2d 399, 409 (7th Cir. 1989) (failure to present an argument to the district court waives the argument on appeal), *cert. denied*, —— U.S. ——, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990).

---

> —— U.S. ——, 109 S.Ct. 1536, 103 L.Ed.2d 840 (1989). Res judicata, as used in this sense, is to be distinguished from "collateral estoppel," or "issue preclusion." Issue preclusion " 'refers to the effect of a judgment in foreclosing relitigation in a subsequent action of an issue of law or fact *that has been actually litigated and decided in the initial action.*' " *Id.* (quoting *Kirk*). Only the application of res judicata is at issue in this case.

6. In the plaintiffs' proposed findings of fact and conclusions of law submitted to the district court, the plaintiffs submitted the following as one of their legal contentions:

> There is also no question that the Nationwide Trust operated under the direction and control of Burton Stern, while represeting [sic] to the creditors and Louis Levit, as trustee of the bankrupt estate of Burton Stern, that it was the trust of Todd Stern in order to fraudulently conceal the assets of Burton Stern. Bankruptcy Judge Schwartz entered an order in the United States Bankruptcy Court for the Northern District of Illinois, *In Re: Burton Stern, Debtor*, Case Number 85 C 10870; Adversary Number 86 A 981, to which both Burton Stern individually and *Todd Stern individually* and as trustee of the Nationwide Trust *were parties*, that the Nationwide Trust was the alter-ego of Burton Stern from its inception and that all assets of the Nationwide Trust and Triad Sales Corporation are to be

**2.**

■ Res judicata cannot apply to bar Levit's claim if Levit would not have had the opportunity to litigate fully his RICO claim against Todd in the adversary proceeding.[7] Our colleagues in the Fifth Circuit recently have considered the potential res judicata effect of bankruptcy proceedings upon a creditor who later sought to assert a RICO claim against certain principals of the debtor's parent corporation. *See Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183 (5th Cir.1990). Particularly instructive for our purposes is the *Howell* court's analysis of the statutory scheme that defines the scope of the bankruptcy courts' jurisdiction. *See id.* at 189; *see also* 28 U.S.C. § 157. This jurisdictional scheme was enacted in response to the Supreme Court's decision in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), which held unconstitutional the jurisdictional regime under the Bankruptcy Reform Act of 1978 on the

> treated as the assets of Burton Stern. Based upon the theory of collateral estoppel as set forth in *Park Lane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) both defendants, Burton Stern and Todd Stern had the opportunity to fully investigate the issues, that there are no procedural opportunities available in this court that were not available in the Bankruptcy Court and that there have been no consistent [sic] findings of any other court which therefore prevents both Burton Stern and Todd Stern from denying that from its inception the Nationwide Trust acted as the alter-ego of Burton Stern and that all property contained therein including Triad Sales Corporation were to be treated as if they were the assets of Burton Stern.
>
> R.126 at 27–28 (emphasis supplied).

7. *See Rudell v. Comprehensive Accounting Corp.*, 802 F.2d 926, 932 (7th Cir.1986) ("It is well-established that the doctrine of *res judicata* is applicable only in cases where the party against whom it is asserted had a full and fair opportunity to litigate the issue."), *cert. denied*, 480 U.S. 907, 107 S.Ct. 1351, 94 L.Ed.2d 521 (1987); *D–1 Enters., Inc. v. Commercial State Bank*, 864 F.2d 36, 38 (5th Cir.1989) ("Essential to the application of the doctrine of *res judicata* is the principle that the previously unlitigated claim to be precluded *could* and should have been brought in the earlier litigation.") (emphasis supplied).

ground that it impermissibly delegated Article III judicial power to non-Article III judges. Under the new jurisdictional regime, bankruptcy courts may "hear and determine all cases under title 11 and all *core proceedings* arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1) (emphasis supplied). The bankruptcy courts also may hear noncore proceedings that are *"related to* a case under title 11," § 157(c)(1) (emphasis supplied), but cannot determine such a "related" proceeding unless all parties consent, § 157(c)(2). In the absence of such consent, the bankruptcy court may only hear the related proceedings and propose findings of fact and conclusions of law that are subject to *de novo* review by the district court. Section 157(c)(1). After examining this jurisdictional scheme, the *Howell* court concluded that previously unasserted claims could be barred by res judicata only if these claims would have been *core proceedings* in the bankruptcy court. 897 F.2d at 189–90. Only under these circumstances, reasoned the court, could it conclude that the claims should have been asserted in the bankruptcy court. *Id.* at 189; *see also I.A. Durbin, Inc. v. Jefferson Nat'l Bank,* 793 F.2d 1541, 1548 n. 8 (11th Cir.1986) (noting that only core proceedings

in bankruptcy may be given res judicata effect). We agree with the reasoning of the *Howell* court. Thus, Levit's RICO claim against Todd individually is barred only if the claim would have been a core proceeding in the bankruptcy court.

### 3.

■ The starting point for determining whether an action is a core proceeding is 28 U.S.C. § 157(b)(2), which contains a nonexclusive list of matters that are considered "core proceedings." [8] Trustee Levit's RICO claim against Todd, a third party relative of the debtor, does not readily fit into any of these categories. Although many proceedings could be considered to fall within the broad terms of the section's two catch-all provisions,[9] both courts and commentators have noted that expansive interpretations of these provisions may produce results that render superfluous the more specific statutory categories and run afoul of the mandate in *Marathon.*[10]

Few courts have considered whether a RICO claim asserted under circumstances similar to those before us would constitute a core proceeding in bankruptcy. Of the bankruptcy and district courts that have considered similar issues, the weight of authority appears to support classification

---

**8.** 28 U.S.C. § 157(b) provides, in pertinent part:

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

**9.** *See* 28 U.S.C. §§ 157(b)(2)(A) & (O), *supra* note 8.

**10.** *See, e.g., In re Ben Cooper, Inc.,* 896 F.2d 1394, 1398 (2d Cir.), *cert. granted,* — U.S. —, 110 S.Ct. 3269, 111 L.Ed.2d 779 (1990); *In re Meyertech Corp.,* 831 F.2d 410, 416–17 (3d Cir. 1987); *In re Wood,* 825 F.2d 90, 95 (5th Cir. 1987); *In re Castlerock Properties,* 781 F.2d 159, 162 (9th Cir.1986); 1 Collier on Bankruptcy ¶ 3.01 at 3–48 to –49 (1990).

of such a claim as a noncore, related proceeding.[11] The court in *Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183 (5th Cir.1990), also concluded that the RICO claims before it would not have constituted core proceedings. The facts of *Howell*, however, are distinguishable from the present facts. *Howell* involved the claims of an individual creditor against third parties in an action that did not affect the value of the estate. By contrast, here, because the present suit involves a claim by the bankruptcy trustee, the value of the estate could be affected by the outcome of the action. Such a potential effect on the estate may well place Levit's RICO claim within this circuit's definition of "related to" jurisdiction under section 157(c)(1): a proceeding that " 'affects the amount of property available for distribution or the

---

**11.** *See In re Posey*, 81 B.R. 416, 417 (Bankr.N.D. Miss.1987) (debtor's RICO complaint against creditor bank deemed noncore proceeding); *In re Sattler's, Inc.*, 73 B.R. 780, 784–85 & n. 4 (Bankr.S.D.N.Y.1987) (Chapter 7 trustee sought to amend complaint in adversary proceeding to include RICO claim against creditor who allegedly received post-petition payments from debtor or in depletion of the estate; bankruptcy court held that it had jurisdiction to entertain proposed amendment to pleadings to include, *inter alia*, the RICO claims, which could expand the action to include non-core, related claims); *In re Southern Indus. Banking Corp.*, 67 B.R. 399, 402 (Bankr.E.D.Tenn.1986) (RICO claim, asserted against third party by liquidating trustee of trust established pursuant to reorganization, was deemed a noncore related proceeding even though recovery on the claim would affect the value of creditor claims and the estate available to creditors); *see also In re Michigan Real Estate Ins. Trust*, 87 B.R. 447, 452–54 (E.D.Mich.1988) (as part of decision withdrawing jurisdiction from bankruptcy court to hear, *inter alia*, RICO claims, district court apparently adopted bankruptcy court's report and recommendation that the claims [including the RICO claims], asserted by beneficiaries of debtor trust fund against trustees and plan administrator of the fund, were not core proceedings); *Burger King Corp. v. B–K of Kansas, Inc.*, 64 B.R. 728, 730, 732 (D.Kan.1986) (dicta "strongly" questioning whether non-[bankruptcy] code federal law claims [including the RICO claim asserted in the proceeding before it] could avoid the dictates of *Marathon* simply by being brought as a counterclaim against the creditor within the literal terms of § 157(b)(2)(C)); *In Re Heritage Wood 'N Lakes Estates, Inc.*, 73 B.R. 511, 514 (Bankr.M.D.Fla.1987) (dicta stating that a district court is better equipped to deal with a RICO action than a bankruptcy court and that a RICO claim "might very well be a noncore proceeding"); *In Re Double TRL, Inc.*, 65 B.R. 993, 996 (Bankr.E.D.N.Y.1986) (dicta questioning the propriety of bringing, *inter alia*, a RICO claim in bankruptcy court in light of the 1984 amendments); *In re Hartley*, 55 B.R. 781, 784 (Bankr. N.D.Ohio 1985) (bankruptcy court *sua sponte* determined that trustee's RICO claims against debtor and debtor's creditor required mandatory withdrawal of the bankruptcy court pursuant to 28 U.S.C. § 157(d)); *In re Turner*, 55 B.R. 498 (Bankr.N.D.Ohio 1985) (on Chapter 13 unsecured creditors' request for relief from automatic stay in order to pursue RICO claims in district court, bankruptcy court noted that, if it were called upon to determine the alleged fraud and RICO violations of the debtor, its review would be limited to proposed findings of fact and conclusions of law; value of estate, however, was not at stake in proposed RICO action); *In re Humphreys Pest Control Co.*, 35 B.R. 712, 714 (Bankr.E.D.Pa.1984) (on creditors' motion for relief from automatic stay to proceed with district court action alleging, *inter alia*, RICO claims, bankruptcy court noted that, under the Emergency Rule [the precursor of the current jurisdictional statute enacted in response to *Marathon*], these claims against the officers and agents of the debtor's corporation would be "related proceedings"); *cf. In re Marill Alarm Sys., Inc.*, 81 B.R. 119, 123 n. 8 (S.D.Fla.1987) (dicta indicating that state RICO action was a noncore proceeding), *aff'd*, 861 F.2d 725 (11th Cir.1988) (table); *In re Timberline Energy, Inc.*, 70 B.R. 450, 451–54 (Bankr.N.D.N.Y.1987) (although no RICO claim involved, bankruptcy trustee brought adversary claim against presumed principal of debtor who had been convicted under federal law of conspiring to conceal assets; basis of trustee's action was federal statute that provided for enforcement of restitution by victims; the bankruptcy court concluded that the trustee's claim was a noncore, related proceeding). *But see In re Inland Shoe Mfg. Co.*, 90 B.R. 981, 983, 987–88 (Bankr.E.D.Mo. 1988) (defendants' motion to change venue and to dismiss deemed core proceedings pursuant to § 157(b)(2)(A) and (O); motion to dismiss included consideration of trustee's RICO claim); *In re Answerfone, Inc.*, 67 B.R. 167, 168 (Bankr. E.D.Ark.1986) (bankruptcy court concluded that trustee's RICO claims, as objections to a creditor's claims and a counterclaim for damages and setoff of an alleged preferential transfer, were core proceedings under 28 U.S.C. § 157(b)(2)(B), (C), and (H)); *In re Giorgio*, 62 B.R. 853, 856 n. 3 (Bankr.D.R.I.1986) (state law RICO claim by trustee against representatives of creditor deemed a core proceeding), *remanded on other grounds*, 81 B.R. 766 (D.R.I.), *remand aff'd*, 862 F.2d 933 (1st Cir.1988); *In re Lion Capital Group*, 46 B.R. 850, 853–54, 861 (Bankr. S.D.N.Y.1985) (RICO counterclaims of limited partners against general partners of debtor entities deemed core proceedings).

allocation of property among creditors.'" *Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 749 (7th Cir.1989) (quoting *In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir.1987)). However, the important question for our purposes is whether such a claim is a core proceeding.

Relatively few circuit cases (and none from this circuit) provide general guidance for determining when a matter that does not readily fit within the enumerated statutory categories is a core proceeding. A leading case among those few that have offered such general guidance is *In re Wood*, 825 F.2d 90 (5th Cir.1987). The *Wood* court adopted the following test for determining whether a matter was a core proceeding:

> [A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.

*Id.* at 97. The court also contrasted "core" and "related" proceedings:

> If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be *related* to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding.

*Id.* (emphasis in original); *see also In re Davis*, 899 F.2d 1136, 1140–41 (11th Cir. 1990) (adopting the *Wood* court's test for core proceedings); *Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1156 n. 9 (3d Cir.1989) (citing with approval the *Wood* formulation). *But see In re Ben Cooper, Inc.*, 896 F.2d 1394, 1398–1400 (2d Cir.1990) (generally espousing a broad interpretation of core proceedings and declining to follow *Wood* to the extent of any conflict), *cert. granted,* —— U.S. ——, 110 S.Ct. 3269, 111 L.Ed.2d 779 (1990); *St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701 (2d Cir.1989) (reasoning that proceedings that have the effect of bringing property into the estate of the debtor are core proceedings); *In re Arnold Print Works, Inc.*, 815 F.2d 165, 168 (1st Cir.1987) (espousing broad interpretation of core proceedings). We believe that the approach of *Wood* and its progeny reflects most precisely the constitutional policy concerns expressed by the Supreme Court in *Marathon* and by Congress in the Bankruptcy Amendments and Federal Judgeship Act of 1984.

Under the *Wood* test, Levit's RICO claim against Todd in his individual capacity is not a core proceeding. First, the claim does not invoke a substantive right created by federal bankruptcy law. Instead, it invokes rights created under the federal RICO statute.[12] Second, this is a claim that could exist outside of the bankruptcy context. Although Levit's claim is for damages resulting from the post-petition diversion of trust funds, the same claim for the same damages over the same time period could have been prosecuted in federal district court. Thus, we conclude that, because Levit's RICO claim against Todd would not have been a core proceeding in bankruptcy, Levit was not required to as-

---

**12.** Although we need not decide the matter definitively, we note that, even assuming that Levit's claim did invoke substantive rights under title 11, any conclusion that the RICO claim could have been litigated in the bankruptcy proceedings might be precluded by 28 U.S.C. § 157(d). Under this "withdrawal of reference" provision, if the resolution of a proceeding "requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce," (e.g., RICO), the district court *must* withdraw such a proceeding from the bankruptcy court upon the motion of a party. *See, e.g., Burger King Corp. v. B–K of Kansas, Inc.*, 64 B.R. 728, 730–31 (D.Kan.1986) (discussing diver-

gent approaches to withdrawal of reference under § 157(d) and withdrawing an adversary proceeding that involved RICO and anti-trust claims); *In re Hartley*, 55 B.R. 781, 784 (Bankr. N.D.Ohio 1985) (bankruptcy court *sua sponte* determined that trustee's RICO claims against debtor and creditor required withdrawal under § 157(d)). *But cf. In re Adelphi Inst., Inc.*, 112 B.R. 534, 536 (S.D.N.Y.1990) (espousing a seemingly narrower view of the withdrawal requirement). *See generally* 1 Collier on Bankruptcy ¶ 3.01(e) at 3–64 to –67 (1990); Comment, *Closing the Escape Hatch in the Mandatory Withdrawal Provision of 28 U.S.C. § 157(d)*, 36 U.C.L. A.L.Rev. 417 (1988).

sert his RICO claim in the adversary proceeding. Therefore, we reverse the judgment of the district court for Todd on Count V.

### Conclusion

For the reasons stated above, we have no jurisdiction to hear the appeals of Barnett and Liss. The judgment of the district court dismissing Count V on grounds of res judicata is reversed and the case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED